State v. Stewart.

---

THE STATE OF NEVADA, RESPONDENT, *v.* JOHN STEWART, APPELLANT.

EFFECT TO BE GIVEN DEFENDANT'S OWN TESTIMONY. In a criminal case the jury has the right to believe such portions of defendant's own testimony as they consider true, and to disbelieve such portions as they consider false: his testimony, like that of other witnesses, is to be weighed and determined by the jury from all the surrounding circumstances of the case.

MERE THREATS WILL NOT JUSTIFY HOMICIDE. Mere threats, unaccompanied by some demonstration of hostility, from which the accused might reasonably infer the intention of their execution by deceased, will not justify homicide.

State *v.* Stewart.

MEANING OF "MALICE AFORETHOUGHT." Where in a murder case the court instructed the jury "that malice aforethought of the statute means a wrongful act done intentionally and without legal cause or excuse :" *Held,* no error.

CRIMES ACT, SEC. 26. AS AN INSTRUCTION. As a bare fear that defendant is in danger of his life, or of receiving great bodily harm, will not justify him in taking life : *Held,* in a murder case, where defendant claimed to have acted in self-defense, that reading section 26 of the act concerning crimes and punishments as an instruction to the jury, was not error.

READING FROM STATUTE IS NOT GIVING ORAL INSTRUCTION. Reading certain sections from the statute as instructions to the jury, is not giving oral instructions.

ARGUMENTS, WHERE CASE SUBMITTED ON OTHER SIDE. Where, in a criminal case, the State was represented by two attorneys ; and after the first had opened the argument to the jury, the defendant's attorney submitted the case and objected to any further argument ; but the other attorney for the State was allowed to address the jury : *Held,* no abuse of discretion.

IMPEACHMENT OF VERDICT BY JUROR. No juror should ever be allowed to impeach the verdict of a jury by testifying to his own misconduct or by asserting his ignorance of the law.

RECOMMENDATION TO MERCY NO PART OF VERDICT. A recommendation to mercy by a jury, in a criminal case, is no part of their verdict, and should not be recorded with it.

APPEAL from the District Court of the Third Judicial District, Esmeralda County.

Defendant was convicted on November 20, 1873, of the crime of murder in the first degree. The jury recommended him to the mercy of the court. His motion for a new trial having been overruled, he was sentenced to be hanged on January 9, 1874. He then took this appeal.

The circumstances of the killing are set forth in the opinion of the Court, as are also several of the instructions given and the objections taken by counsel at the trial of the cause in the court below. In addition to the instructions therein repeated, two others, called the second and fifth, are referred to. The second, as asked by defendant and given by the

9

court, was as follows: " 2. If the jury find from the evidence that the defendant, John Stewart, on or about the 4th day of May, 1873, at the County of Esmeralda, did kill Frank Durand; and that said Durand had threatened at divers times during the two or three weeks immediately preceding the said 4th day of May, 1873, that he would kill the defendant, John Stewart; or if the jury find that the said John Stewart had been informed and verily believed that said Durand had made such threats; and that the said John Stewart verily and reasonably believed at the moment he killed said Durand that said Durand was attempting to kill him (Stewart) and that he was in imminent danger of losing his life or of suffering great bodily harm; then in that case the defendant was not bound to attempt to escape if he reasonably believed that such attempt to escape would greatly increase the danger to his life or person."

The fifth instruction, asked by defendant and refused by the court, was as follows: " 5. In determining whether the defendant had reason to believe and did believe at the time of the killing that deceased was intending and attempting to take his life, you are entitled to consider the testimony of the defendant; and in all matters, wherein the defendant is uncontradicted by the facts and circumstances of the case or the testimony of one or more of the witnesses, you ought to receive the defendant's statement as the truth."

The affidavit of J. M. Collins, one of the jurors, by which it was attempted to impeach the verdict, set forth "that upon the evidence given on the trial of said cause he (Collins) had, while deliberating upon said verdict, reasonable and grave doubts that the said defendant was guilty of murder in the first degree; that he stated to his fellow jurors in said cause that he (Collins) could not conscientiously render a verdict upon the evidence in said cause, which would legally require the penalty of death to be inflicted upon the said defendant; that D. F. Manning, foreman of said jury, and

others of deponent's fellow jurors in said cause, then agreed with this deponent that if said jury would render a verdict in said cause of murder in the first degree and at the same time recommend the said defendant to the mercy of the court, then in such case the said court would have discretion to sentence the said defendant to be imprisoned at hard labor in the State prison of this State during the term of his natural life as a full and sufficient punishment for such crime.   Deponent further says that he was convinced by the arguments of the said D. F. Manning and others of his fellow jurors in said cause; that he believed what they said as above set forth, and that he thereupon agreed to the said verdict as above set forth.   Deponent further says that he believed from the statements of the said D. F. Manning and others of his fellow jurors as above set forth that the court had such discretion as above stated, and that upon consideration of the evidence the court would only sentence the said defendant to imprisonment as above stated; and that, if he (deponent) had not believed the court had such discretion and would so exercise it, he never would have consented or agreed to said verdict as above set forth."

*Robert M. Clarke*, for Appellant.

I.   There was error in denying defendant's motion to submit the cause without further argument, after the State's attorney had concluded his address to the jury, and in permitting Thomas Wells, Esq., of counsel for the State, to make a second argument after defendant had declined to argue.   Crim. Pr. Act, Sec. 355.

II.   There was error in the modification of the third instruction asked by defendant.   The definition of malice aforethought, added by the court, was clearly erroneous, and could have had no other tendency than to mislead the jury.   1 Dev. & Bat. 121; 10 Mich. 212; 1 Russell on Crimes, 482.

III.   There was error in refusing the fourth instruction asked by defendant.   It was not necessary that the danger should be real; it was sufficient that it *appeared* to be real. It was not necessary for the defendant to wait until he was actually assailed; it was sufficient if he believed as a reasonable man, and had reason to believe that Durand was attempting to take his life.   1 Bishop Crim. Law, 305 and note; 17 Alabama, 587; 37 Cal. 683; 8 Mich. 150; 2 Wright (Pa.) 266; 18 B. Mon. 49; 8 Bush, 488.

IV.   There was error in refusing the fifth instruction asked by defendant because defendant was a competent witness, and was entitled to be treated as any other witness. *People* v. *Cronin,* 34 Cal. 204.

V.   There was error in reading sections 18, 19, 20, 25, 26, and 27 of the Crimes Act to the jury because all instructions must be written, and should be delivered to the jury.   Criminal Pr. Act, Secs. 387, 393, 355; 8 Cal. 423; 12 Cal. 345; 26 Cal. 78; 43 Cal. 34; 1 Nev. 36.   Also, because section 26 was inapplicable and calculated to mislead the jury.

VI.   There was error in instructing the jury that "no threats or menaces made by the deceased against the defendant, John Stewart, can avail Stewart, unless he at the time of the killing was actually assailed or had sufficient evidence to convince any reasonable person that he was in danger of incurring bodily injury or of losing his life at the hands of the deceased."   "Threat" and "menace" are not exactly synonymous terms.   To draw or to attempt to draw in a threatening manner a pistol would be a menace (see Webster; 2 Bishop Crim. Law, Sec. 23, note 1; Sec. 24, note 1,) and such "menace" would not be an assault.   1 Ire. 125; 30 Ala. 14; 23 Texas, 574.   In effect, therefore, the jury were charged that if the deceased had threatened defendant's life, and if at the time of the killing he had drawn his pistol for the purpose of putting his threat into execution, it would

avail the defendant nothing in his defense. The defendant need not wait until he is assailed; he may defend himself, whenever as a reasonable man he believes an attempt is being made upon his life. 37 Cal. 676; 32 Iowa, 36; 8 Bush (Ky.) 481; 16 Ill. 17; 47 Mo. 604; 8 Mich. 150; 2 Bishop Crim. Law, Sec. 865; 17 Ala. 587. The defendant need not wait until he has evidence sufficient to convince; it is sufficient that he has reasonable cause to apprehend the threatened blow. 37 Cal. 676.

VII. The court should have granted a new trial upon the affidavit of the juror that he was induced to find the verdict upon the assurance and belief that the recommendation to mercy would in effect reduce the crime. 12 How. U. S. 361; *Crawford* v. *State*, 2 Yerg. 60.

*Thomas Wells*, for Respondent.

I. This is not a case in which one juror can, by his affidavit alone, be permitted to impeach his own and the verdict of eleven other jurors. The recommendation to mercy was mere surplusage. *People* v. *Lee*, 17 Cal. 76; *Castro* v. *Gill*, 5 Cal. 40; *Boyce* v. *Cal. Stage Co.*, 25 Cal. 460; *People* v. *Hughes*, 29 Cal. 257; *Turner* v. *Tuolumne Co. Water Co.*, 25 Cal. 400.

II. Section 355, subdivision 5, of the Criminal Practice Act, provides that " When the evidence is concluded, unless the case is submitted to the jury on either side, or on both sides, without argument, the counsel for the people must open and must conclude the argument." The learned judge below decided this provision to mean that, if counsel for defendant in a criminal case wish to have counsel for the State confined to *one* argument only, he must announce the fact that defendant will submit the cause without argument as soon as the testimony is concluded, and not lead counsel for the State to believe he is going to argue the case until after

the cause is merely opened for the State; and then, for the first time, decline argument. It seems to us this was a correct exposition of the spirit and intendment of the law.

III. There was no error in *reading* as part of the charge sections 18, 19, 20, 25, 26, and 27 of the Crimes Act. That portion of the charge was necessary to be given; for the defendant had admitted the killing, and set up that he did it in necessary self-defense. There being evidence tending to show an unprovoked, malicious, willful, deliberate and premeditated killing, taken in connection with this admission and plea of justification, it became necessary to define all the crimes covered by the indictment; and justifiable and excusable homicide as well. It made no difference that the judge *read* those sections *from the statutes*, instead of transcribing them and then reading the transcription. The statutory provision requiring charges and instructions to be in writing does not apply to the giving of statute law in charge to juries; it has strict reference to the charge of a court given in its own language, and not in the exact words of the *enacted statute*. *People* v. *Henderson*, 28 Cal. 465; *People* v. *Payne*, 8 Cal. 341.

IV. There was no error in making the addition, defining malice aforethought to the third instruction asked by defendant. The instruction as asked was scarcely admissible; it was vague and calculated to confuse the jury; and it was therefore the duty as well as the privilege of the court to add to and render it plain. *People* v. *Dodge*, 30 Cal. 448; 34 Cal. 48; 31 Cal. 357. Nor was there error in giving the instructions asked by the State, they being the same as those sustained by this court in *State* v. *Hall*, ante 58.

V. Defendant's first instruction was properly refused because it would have been, in effect, instructing that the jury might find from the evidence that threats, alone, without any attempt to execute them on the part of Durand,

justified defendant in killing him.   Defendant's fourth in-
struction was subject to substantially the same objections;
it would have led the jury to infer that, no matter what the
real facts might have been in regard to danger, if defendant
believed he was in danger, he had a right to kill Durand,
whether Durand was making any attempt or not and without
any demonstration, "sufficient to excite the fears of a
reasonable person."   Nor was this instruction pertinent,
under the facts of this case.   *People* v. *Moore*, 8 Cal. 90;
*People* v. *Gatewood*, 20 Cal. 146; *People* v. *Williams*, 32 Cal.
280; *People* v. *Honshell*, 10 Cal. 83; 27 Cal. 572; 8 Cal. 390;
17 Cal. 316; 6 Cal. 405; 30 Cal. 312.   Defendant's fifth
instruction would have been in derogation of the constitu-
tional provision that "judges shall not charge juries in
respect to matters of fact, but may state the testimony and
declare the law."   Art. VI, Sec. 12.   It would, in effect,
have been saying to the jury, "the defendant has given some
uncontradicted testimony, and that part of his evidence you
ought to take as the undisputed truth."   The uncorroborated
testimony of an accomplice is not a sufficient showing of
fact to justify a conviction of crime.   Shall it be laid down
as a rule of criminal jurisprudence that the uncontradicted
testimony of an accused, on trial, ought to be taken as the
truth ?


By the Court, HAWLEY, J.:

Defendant was convicted of murder in the first degree.
This appeal is from an order of the court refusing him a
new trial.   Frank Durand (deceased) was shot and instantly
killed by defendant, in the Tent Saloon at Columbus, on the
4th day of May, 1873, about 11 o'clock P. M.   He had just
asked some parties in the saloon to take a drink, and at the
time of receiving the fatal shot he was standing about six or
eight feet from the counter, and eight or ten feet from the

front door. Defendant was in the street. No words were spoken by either party. Defendant claimed that the shot was fired in self-defense.

The defendant testified that he had been informed that Durand had at different times, within a month prior to the homicide, frequently threatened his life. That on the night of the homicide, he (defendant) in company with one Thompson and others left Jellison's saloon, for the purpose of going to McDonald's saloon, to witness a game of cards. "As I got up," says defendant, "in front of the Tent Saloon, Thompson called out 'look! look! Johnny! Frank is going to shoot.' I was in the act of stepping upon the porch when the words were spoken by Thompson. I looked inside of the saloon at the instant and saw Frank Durand * * * facing the door in a stooping position, with his hand on his pistol, as I supposed. I drew and fired, and ran without waiting to see the effect of my shot." In addition to this statement of defendant, there was some testimony tending to show that when deceased fell, a pistol dropped from his side on the floor, and that "just before the shooting, Durand faced the door in a stooping position." A witness for the prosecution testified that within an hour before the homicide, Stewart and Durand were in the street, and that after some conversation about previous differences they "agreed to be friends." The testimony on the part of the prosecution tended to show that no one was present with defendant; that no remarks were made by any one; that no demonstrations were made by deceased, and that defendant's version of the homicide was a fabrication. In connection with this testimony, the numerous exceptions to the instructions of the court will be considered.

1. The court refused to give the following instruction asked by defendant: "Fourth. If you believe from the evidence, that shortly before the killing, the deceased threatened the defendant's life, and at the time the killing occurred

defendant had reason to believe, and did believe, that deceased was about to put his threat into execution, then you must find the defendant not guilty." This refusal is assigned as error.

It was argued by counsel for the State that this instruction was properly refused because it was not pertinent under the facts. This position is untenable. The testimony was sufficient to authorize the giving of such instructions as were proper to present the question of justifiable homicide to the consideration of the jury. The court, however, was justified in refusing the instruction upon other grounds. The principle of law stated in the instruction, without qualification, is not correct. If the defendant could reasonably have avoided the difficulty without resorting to such extreme measures he should have done so.

The law of self-defense is founded on necessity, and in order to justify the taking of life upon this ground it must not only appear that the defendant had reason to believe, and did believe, that he was in danger of his life, or of receiving great bodily harm; but it must also appear to the defendant's comprehension as a reasonable man, that to avoid such danger it was necessary for him to take the life of the deceased. Without this qualification the instruction was clearly erroneous. *State* v. *Ferguson, ante* 106; 2 Cooley's Blackstone, Book IV., p. 183; 1 Russ on Cr. 660–1; 2 Bishop on Criminal Law, Sec. 627 (544); *Logue* v. *Commonwealth,* 38 Penn. State, 268; Charge of Agnew J. in *Commonwealth* v. *Drum,* 58 Penn. State, 20; *U. S.* v. *Mingo,* 2 Curtis C. C. R. 5; *State* v. *Wells,* 1 Coxe (N. J.) 430; *People* v. *Shorter,* 4 Barbour, 472–483; *People* v. *Hurley,* 8 Cal. 391; *Dupree* v. *State,* 33 Ala. 389. Moreover, the court gave the second instruction asked by defendant, which was as favorable for him as the testimony, viewed in any light, would warrant.

2.   The fifth instruction was properly refused.   The jury had the right to believe such portions of defendant's testimony as they considered true, and to disbelieve such portions as they considered false.   His testimony, like that of other witnesses, is to be weighed and determined by the jury from all the surrounding circumstances of the case—his demeanor on the witness stand, the probabilities of his testimony being true or untrue, taken in connection with the testimony of other witnesses deemed reliable.   In short, "the credit to be given to his testimony" should be (where the statute places it) "left solely to the jury."   Stats. 1867, 58; *People* v. *Cronin*, 34 Cal. 194.

3.   It is claimed that the court erred in giving this instruction: "No threats or menaces made by the deceased against the defendant, John Stewart, can avail Stewart, unless he at the time of the killing was actually assailed, or had sufficient evidence to convince any reasonable person that he was in danger of incurring bodily injury or of losing his life at the hands of the deceased."   The correctness of this instruction, as applied to the case of the *State* v. *Hall*, *ante* 58, from which it is copied, is admitted by counsel for defendant.   But he contends that it was not proper under the testimony in this case.   Although carelessly drawn, we think the instruction, considering all the testimony, was applicable and correct.   Mere threats, unaccompanied by some demonstration of hostility from which the accused might reasonably infer the intention of their execution by deceased, would not justify the homicide.   Nor would acts of hostility, however violent, of themselves excuse the slayer.   There must be some overt acts or words at the time clearly indicative of a present purpose to do the injury.   The defendant must show either that he was actually assailed or that he was menaced by the deceased at the time in such a manner as to induce him as a reasonable person to believe that he was in danger of his life or of re-

ceiving great bodily harm. 2 Bish. Cr. Law, Sec. 651; *State v. Hall, ante* 58; *Bohannan* v. *Commonwealth*, 8 Bush, 488; *Rippy* v. *State*, 2 Head, 220; *People* v. *Lombard*, 17 Cal. 319; *Johnson* v. *State*, 27 Tex. 767; *People* v. *Scoggins*, 37 Cal. 683.

4. The court gave the following instruction asked by defendant's counsel : " Malice is a question of fact; and in this case the burden of proof lies upon the prosecution to satisfy the jury of the malice of the defendant. The jury ought not to presume that the defendant acted with malice unless they are satisfied it is just in this particular instance." In connection with this the court instructed the jury, "that malice aforethought of the statute means a wrongful act, done intentionally, and without legal cause or excuse." And it is contended that this modification is erroneous. The words, malice aforethought, mean malice previously and deliberately entertained. They refer to the state of defendant's mind anterior to, or at the time of, the homicide. If defendant intended to and did take the life of deceased without any just cause or excuse, then the law presumes that such an unlawful act was done with malice aforethought. "Malice," in its legal sense, "means a wrongful act, done intentionally, without just cause or excuse." Burrill's Law Dictionary; *State* v. *Decketts*, 19 Iowa, 448; *Warren* v. *State*, 4 Coldwell, 136; *Murphy* v. *State*, 30 Ind. 513; *Commonwealth* v. *York*, 9 Met. 104.. No injury could possibly have resulted to defendant from this modification.

5. The bill of exceptions shows that the court read to the jury, as a part of the instructions in the case, "Sections 18, 19, 20, 25, 26, and 27 of the 'Act concerning crimes and punishments,' approved Nov. 26, 1861." (See Stats. 1861, 59, 60.) This is assigned as error. It is argued, first, that section 26 is inapplicable; second, that all the sections read should have been reduced to writing and delivered to the jury. Section 26 was clearly applicable. A bare fear that defendant is in danger of his life, or of receiving great bodily

harm, will not justify him in taking life. Where the defendant claims that he acted in self-defense, as well as in the other enumerated cases of justifiable homicide mentioned in section 25, "It must appear that the circumstances were sufficient to excite the fears of a reasonable person, and that the party killing really acted under the influence of those fears, and not in a spirit of revenge."

Under the provisions of section 355, of the Criminal Practice Act, the instructions must be in writing. Oral instructions cannot be given except by the consent of the parties. But reading certain sections from the statute, is not giving oral instructions. If the court should have its entire charge printed it would, under well known rules of construction, be considered a compliance with the statute. The object of the statute was to require certainty, so that the exact language used by the judge in the court below might be presented to the appellate court. Was not this object accomplished by the specification, in the charge, of the sections read? What difference could it possibly make to the jury, (or to the defendant), whether the court read from the statutes, or copied the sections? Certainly none; unless it was error not to give the instructions to the jury when they retired to deliberate upon their verdict.

Section 393 of the act provides that the jury may take with them certain papers (therein specified), "and also the instructions of the court." (Stats. 1861, 477.) Whatever the rule, under this section, might be, if the jury requested the instructions, certain it is, that no error prejudicial to defendant could arise unless such a request was made and refused. It is usual and we think the better practice, for courts to copy such portions of the statute as are deemed applicable, and to deliver to the jury all the instructions given.

6. It appears from the bill of exceptions that the State was represented by two attorneys, the defendant by one.

That when the evidence was concluded, the district attorney opened the case for the prosecution; and at the close of his argument, the attorney for defendant proposed to submit the case to the jury without further argument and objected to any further argument being made. This objection was overruled, and the associate of the district attorney was allowed to address the jury. It is claimed that this was erroneous. The statute provides that "when the evidence is concluded, unless the case is submitted to the jury on either side or on both sides, without argument, the counsel for the people must open and must conclude the argument." Stats. 1861, 472, Sec. 355. Either party may claim the privilege of addressing the jury, or of submitting the case without argument. If either party desired to submit the case without argument, it would be his or their duty, to make such a statement when the evidence was concluded. This would certainly be just and fair to the opposite counsel, giving him or them an opportunity to accede to such a proposal or to insist upon arguing the case. On the one hand, the counsel representing the State should, in case defendant's counsel insists upon argument, be required, if so desired by defendant's counsel, to open the case, stating the evidence and points to the jury, and citing the authorities to the court, upon which he relies for a conviction. On the other hand, the defendant's counsel should not be allowed to convey the idea that he intends to argue the case, until after the opening argument was concluded, and then by proposing to submit the case without further argument, deprive the State of the opportunity of presenting its case in as full and clear a light as it might and probably would have done if such a proposal had been made when the evidence was concluded, and the court then have decided that but one argument was admissible. The objection not being made at the proper time, we are of opinion that the question was within the discretion of the court, and the presumption

arises that it was properly exercised and that no error occurred.

7.  The affidavit of Collins presents no question worthy of consideration.  No juror should ever be allowed to impeach the verdict of the jury by testifying to his own misconduct, or by asserting his ignorance of the law.  These principles are now too well settled to require discussion, or citation of authorities.

The recommendation to mercy constituted no part of the verdict, and should not have been recorded with it.  *People* v. *Lee*, 17 Cal. 76.

The judgment of the district court and its order overruling defendant's motion for a new trial are affirmed, and the court is directed to fix a day for carrying the sentence into execution.

WHITMAN, C. J., did not participate in the foregoing decision.