## JOHN LATHROP
### *v.*
## THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed June 19, 1902.*

1. CRIMINAL LAW—*in absence of errors of law, courts are loth to set aside conviction.* In the absence of errors of law the Supreme Court will not reverse a judgment of conviction, unless the finding of the jury is not sustained by the evidence or it is palpably contrary to the weight of evidence.

2. SAME—*intent of assault may be inferred from circumstances.* The intent with which an assault was committed is a question of fact, to be shown by the declarations of the party or to be inferred from the character and circumstances of the assault.

3. SAME—*new trial not granted to procure merely cumulative evidence.* A new trial will not be granted upon the ground of newly discovered evidence where it appears such evidence is merely cumulative and not conclusive, and where due diligence in its production has not been observed.

4. SAME—*what does not excuse failure to issue subpœna.* That defendant's counsel called upon a party wanted as a witness but was unable to find her at home is not an excuse for not issuing a subpœna to procure her attendance at the trial.

WRIT OF ERROR to the Circuit Court of Knox county; the Hon. GEORGE W. THOMPSON, Judge, presiding.

This is a prosecution for assault with intent to commit rape. There were two trials of the case. Upon the first trial there was a disagreement of the jury. At the February term, 1902, of the Knox county circuit court there was a second trial, resulting in a verdict of guilty.

A motion for a new trial was made, upon the hearing of which affidavits were introduced. This motion was overruled, and judgment was rendered upon the verdict, sentencing plaintiff in error to the penitentiary for a term of not less than one nor more than fourteen years, to be terminated on the recommendation of the board of pardons, as by statute in such case made and provided. The present writ of error is prosecuted to reverse such judgment of conviction.

W. T. SMITH, and M. J. DAUGHERTY, for plaintiff in error.

H. J. HAMLIN, Attorney General, A. J. BOUTELLE, State's Attorney, and F. F. COOKE, for the People.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion of the court:

In this case no errors are assigned in regard to the giving or refusal of instructions. It is not claimed by the plaintiff in error, that the court below erred in giving any instruction which was given for the People, or in refusing to give any instruction which was asked by the plaintiff in error.

Although there are assignments of error upon the record to the effect that the trial court admitted improper testimony over the objection of plaintiff in error, and refused to admit proper evidence offered by plaintiff in error upon the trial, yet no point is made by counsel for plaintiff in error in regard to such admission or exclusion of evidence. Counsel for plaintiff in error do not state in their brief, that there was any error committed by the court below in the admission or exclusion of testimony. The only alleged errors discussed by counsel for plaintiff in error in their brief are those hereinafter mentioned.

*First*—It is claimed on the part of plaintiff in error, that the proof does not sufficiently identify plaintiff in

error as the person who committed the crime, charged in the indictment.

The evidence shows substantially the following state of facts: Betsey Wilson, a Swedish woman forty-seven years old, resided with her son and her mother, the latter being eighty years of age, in a house in Knoxville, Knox county, which, from the testimony and plat introduced in evidence, would appear to have been located in a remote and sparsely settled part of the town. On the evening of September 17, 1901, about eight o'clock, Mrs. Wilson went from her home to the business part of Knoxville to do some errands. Her home was the only house in a block, which fronted upon a street or alley, called Park street. She walked south on Park street to North street, east on North street to Market street, and south on Market street to certain places of business upon the public square. She called at a doctor's office to consult with him, and went to a drug store to get some medicine, and to a meat market, and to a grocery store, to get some meat and groceries. Some time between eight and nine o'clock she started home, going north to North street, and walking west on North street. While she was walking along North street, she heard a man coming up behind her. She swears, as will be hereafter stated, that this man was the plaintiff in error, John Lathrop. She states in her testimony that plaintiff in error was intoxicated; that "he came up; smelled strong of liquor; he was not real drunk, but staggered;" that he walked behind her a part of the way, and then came alongside of her; that he asked her if she was a Swedish woman, and stated that he was a Swede; that he stated that he was going to his home near the fair grounds; that, when she arrived at a certain corner, she pointed out to him the road leading to the fair grounds, but he asked her where she lived, and when she told him that she lived in the next block, he said that he sometimes went home that way himself. He talked to her in a

maudlin way, saying that one Johnson had recommended her to him as a proper woman for him to marry. He said to her that he desired to marry her, and would give her $4000.00. She says that she told him, that she didn't desire to marry him, and to look elsewhere for some other woman. When she reached the corner of Smith street and Park street, she turned north to go to her home, and he followed her. The evening was "dark and blustering." There seems to have been, between the corner of Park street and North street and her home, a hollow or depression in the ground. Park street had no sidewalks, and there was a wagon track in the middle of the street. A man, named Lewis, lived on the Galesburg road west of Park street, and south-west from Mrs. Wilson's home. Near Lewis' house was an electric light. Mrs. Wilson states that at this point, upon plaintiff in error making some remark to her, she turned and looked him in the face, and saw his face in the glare of the electric light. Further north, however, towards her home, the electric light failed to extend, so that the road was dark. When they were near the gate of her house, he struck her and knocked her down, and told her to keep still, or he would kill her. He pushed her against a bank, placing his hand upon her throat, and pulled her into the shadow of two or three trees, standing north of the gateway. She states that she hardly knew what happened, but that he was on top of her, and had one hand on her shoulder, and one on her throat, when the footsteps of someone, coming out of the gate of her yard, were heard. This frightened him, and he arose, and went towards the north upon Park street. She then rose and went into her home. The evidence shows clearly, that the next day there were bruises on her head, and marks on her throat.

Mrs. Wilson stated that the man, who thus assaulted her, was a man with a dark complexion and a dark mustache. She did not know Lathrop, and had never seen him before that evening. A few days afterwards he was

arrested, and when he was taken into her presence by the officers who arrested him, she identified him as the man who had assaulted her, and swore that he was the man. Witnesses were introduced by the defendant swearing, in substance, that the prosecuting witness stated to them that she did not know, who assaulted her, and was not able to say, whether it was plaintiff in error or not. The witnesses, so testifying for the purpose of contradicting her, were one of Lathrop's attorneys, a witness in this case, and his mother, and his sister-in-law. The jury saw Mrs. Wilson, the prosecuting witness, and they saw the witnesses, whose testimony was produced for the purpose of contradicting her. It was for the jury to determine which of these witnesses was most deserving of credit.

Many facts and circumstances confirm the testimony of Mrs. Wilson. It is shown by other witnesses, that plaintiff in error was such a looking man as Mrs. Wilson described him to be, before the officers produced him in her presence; that he was seen near the public square upon Market street and upon North street, and in the neighborhood of the stores where Mrs. Wilson went that evening, and that he was in an intoxicated condition. It is shown by the testimony of other witnesses than Mrs. Wilson, that he was seen going towards the west just before or about the time, when Mrs. Wilson was returning westward after finishing her errands. It is shown also by other testimony, that plaintiff in error was seen coming from the west shortly after the time when Mrs. Wilson says that the assault was committed. When he fled northward on Park street after the assault, it was possible for him to have gone around the north end of the block, and going south upon Henderson road on the east side of the block, he could easily have reached North street, and returned to the neighborhood of the public square, where he was seen shortly after the assault was committed. Many other circumstances might be named,

having a tendency to confirm the testimony of Mrs. Wilson identifying plaintiff in error as the person who committed the assault, but it is unnecessary to notice them.

In the absence of errors of law, the court will not set aside a verdict, unless it is manifestly erroneous. (*Gore* v. *People*, 162 Ill. 259; *Bromley* v. *People*, 27 id. 20). To justify this court in reversing upon the ground that the evidence is insufficient, it must appear that the finding of the jury is not sustained by the evidence, or that it is palpably contrary to the decided weight of the evidence. (*Steffy* v. *People*, 130 Ill. 98, and cases cited). In *Steffy* v. *People, supra,* which was an indictment for an assault to commit murder, we said: "It is urged, first, as ground of reversal, that the verdict of the jury is contrary to the evidence. Whether the evidence warranted the verdict was a question of fact peculiarly within the province of the jury to determine, and great weight is to be given to their finding. Courts are reluctant to substitute their opinion for that of the jury upon controverted questions of fact. * * * It is only when this court is able to say, from a careful consideration of the whole of the testimony, that there is clearly reasonable and well-founded doubt of the guilt of the accused, that it will interfere on the ground the evidence does not support the verdict." (See also *Rafferty* v. *People,* 72 Ill. 37). After a careful examination of the evidence, we are unable to say that the verdict in the case at bar is manifestly erroneous, or that the finding of the jury is palpably contrary to the decided weight of the testimony.

*Second*—It is claimed on the part of the plaintiff in error, that the testimony does not show an assault with intent to commit rape. The contention of counsel for plaintiff in error upon this branch of the case is, that the assault may have been committed for the purpose of robbery or murder, or with some other object than that of committing rape. There is testimony in the record, showing that the assault was made with intent to commit

rape. Some of the witnesses testified that plaintiff in error, shortly before he began to follow Mrs. Wilson on that evening, was seen in an intoxicated condition going into and coming out of one or more stores fronting upon the public square. No objection was made to the proof as to his intoxicated condition, which is spoken of by nearly all the witnesses, who saw him on that evening. Mrs. Wilson, as has already been stated, testified that he made a proposition to her to marry her. The nature of his conversation with her, and of his actions towards her, including the assault itself, and his conduct as above stated, show the temper of his mind, and that matrimony to him meant nothing more than sexual intercourse. It cannot be said that there is not evidence to show, that the purpose of the assault, made by plaintiff in error, was to commit rape.

Section 9 of division 2 of the Criminal Code contains the following provision: "Intention is manifested by the circumstances connected with the perpetration of the offense, and the sound mind and discretion of the person accused." (Hurd's Stat. 1899, p. 621). Every sane man is presumed to intend the natural and probable consequences of his act, and the intent may be inferred from the acts of the person charged with crime, as well as by words and declarations. The intent, with which the act is done, is a question of fact, either to be shown by the declarations of the party, or to be inferred from the character, manner and circumstances of the assault. (*Crosby* v. *People*, 137 Ill. 325).

In *Fitzpatrick* v. *People*, 98 Ill. 269, where the indictment was for an assault with intent to commit rape, it was contended, as it is contended here, that the testimony failed to show the accused to be guilty of the crime for which he was indicted; and it was there said (p. 273): "It is conceded a wanton assault was made on the prosecutrix. The intent, with which the assault was made, of course characterizes the crime, and determines whether

it was a felony or a mere misdemeanor. Neither the accused, nor his counsel, have assigned any motive for the assault consistent with his innocence. If it was not done with the intent charged in the indictment, what possible motive could have induced the assault? The manner, time and place of the assault were all elements to be considered by the jury in arriving at a conclusion as to the intent with which the assault was made upon the prosecutrix. * * * It is a correct principle, and one applicable to the case, that it was not necessary to a conviction it must be proved defendant expressed by words what his intention was in assaulting the prosecutrix. His intention, whatever it was, could be made to appear as well from proof of his acts, as from spoken words." In the case at bar, no motive has been assigned for this assault, if it was not with the intention to commit rape. There is no evidence whatever showing, or tending to show, in the remotest degree, that plaintiff in error assaulted Mrs. Wilson for the purpose of robbing her, or of murdering her. The time, and manner, and place, and all the circumstances go to show that the assault was made with the intent alleged in the indictment.

*Third*—It is next contended by counsel for plaintiff in error, that the trial court erred in refusing a new trial upon the ground of newly discovered evidence. The affidavits, filed by plaintiff in error upon the motion for a new trial, show that whatever evidence it was proposed to introduce upon another trial was merely cumulative and impeaching, and not conclusive in its character. Nor do these affidavits show that plaintiff in error was not guilty of negligence in not discovering and producing such evidence upon the former trial.

These affidavits are mostly to the effect, that Mrs. Wilson admitted in conversation with the parties, making the affidavits, subsequently to the assault, that she did not know positively that it was the plaintiff in error, who made the assault. This was the same kind of con-

tradictory evidence, which was introduced upon the trial, which resulted in the conviction of the plaintiff in error. Some of the other affidavits fixed the times, when plaintiff in error was seen at different places on that evening, as being different from the times stated by Mrs. Wilson in her testimony. Witnesses always differ more or less as to the precise time when a transaction occurred. The contradictions thus pointed out are not so material as to justify the discrediting of Mrs. Wilson's testimony. The affidavits with a view to showing diligence, and that the testimony was newly discovered, show, in fact, that the alleged new evidence was known to plaintiff in error, or his attorneys, at the time of the former trial. No subpœnas seem to have been issued to procure the attendance of the witnesses, named in these affidavits, upon the first trial. The mere fact, as stated in one of the affidavits, that counsel for plaintiff in error called upon one of these witnesses and found her away from her house, and, therefore, was unable to see her, is no excuse for not issuing a subpœna to procure her attendance at the trial.

A new trial will not be granted on the ground of newly discovered evidence, which is merely cumulative and not conclusive. (*Adams* v. *People*, 47 Ill. 376; *Dyer* v. *People*, 84 id. 624; *Bean* v. *People*, 124 id. 576). The practice is well settled in this State, that a new trial will not be granted for the purpose of permitting the introduction of such additional evidence; otherwise, it would be necessary to grant a new trial in almost every case, and few convictions would be permitted to stand. (*Gilmore* v. *People*, 124 Ill. 380; *Lilly* v. *People*, 148 id. 467; *Burns* v. *People*, 126 id. 285; *Williams* v. *People*, 164 id. 481). Newly discovered evidence, which is in its nature impeaching, will not authorize the granting of a new trial. (*Tobin* v. *People*, 101 Ill. 121; *Grady* v. *People*, 125 id. 122).

In *Spahn* v. *People*, 137 Ill. 538, we said (p. 544): "The rule is well settled that, to authorize a new trial on the ground of newly discovered evidence, it must appear that

the evidence has been discovered since the trial, and that the party has not been guilty of negligence in not ·discovering and producing it on the former trial.   *   *   * Nor will a new trial be granted on the ground of newly discovered evidence. where such evidence is merely cumulative and is not conclusive in its character."

*Fourth*—It is said by counsel for plaintiff in error, that the conduct of counsel for the People in cross-examining Susan Lathrop and May Lathrop, the mother and sister-in-law of plaintiff in error, was reprehensible and calculated to inflame the passions of the jury, and should be regarded as good ground for reversing the judgment.   These questions referred to alleged conduct on the part of plaintiff in error in other transactions, not involved in the case on trial, and sought to call out from the witnesses answers to the effect, that they had given testimony in some case of the same kind as this on some former occasion. These questions were objected to when asked, and the objections were sustained by the court. In sustaining the objections, the court carefully instructed the jury to disregard such questions, and draw no inference from them.   We cannot see why the rights of plaintiff in error were not thus fully protected by the court.   His case could in nowise have been hurt thereby. The authorities, cited by counsel for plaintiff in error upon this subject, are those where counsel for the People made improper remarks outside of the record in closing arguments to the jury, and where the defendant's counsel had no opportunity to reply.   Such authorities have no application here.   It is not claimed, nor does the record show, that counsel for the People made any improper remarks to the jury at any time during the trial of the case, or in their argument to the jury.

No error has been called to our attention, which would justify us in reversing the judgment entered in this case. Accordingly, the judgment of the circuit court of Knox county is affirmed.                    *Judgment affirmed,*