(No. 22580.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* RANDOLPH BEACHAM, Plaintiff in Error.

*Opinion filed October 24, 1934—Rehearing denied Dec. 13, 1934.*

A. M. FITZGERALD, and H. C. MOORE, for plaintiff in error.

OTTO KERNER, Attorney General, A. H. GREENING, State's Attorney, J. J. NEIGER, and THOMAS W. HOOPES, for the People.

Mr. JUSTICE ORR delivered the opinion of the court:

By this writ of error to the circuit court of Sangamon county the defendant, Randolph Beacham, seeks reversal of a judgment based upon the verdict of a jury finding him guilty of violating paragraph 229 of the Criminal Code. (Smith's Stat. 1933, chap. 38, p. 1033.) He was indicted and tried for procuring an explosive compound with intent to use it for the unlawful injury or destruction of life and property.

At about 2:45 o'clock in the morning of November 6, 1933, defendant was arrested as he came out of an alley in the rear of the C. I. P. S. building, in Springfield. The officer who made the arrest believed he might be a "firebug" for whom the authorities were looking. When arrested he was carrying a fused bomb made from a syrup can. At this time he said he was without work and was a coal miner who had worked at various times in Detroit. The Peabody Coal Company, an owner and operator of coal mines in the Springfield territory, had an office in the C. I. P. S. building. All of the miners employed by the company were members of the United Mine Workers of America. A rival organization, the Progressive Miners, wanted to place its members upon the pay-roll of the company. A struggle ensued which has led to violence and bombing.

Charles Walker, a police officer, testified that he saw defendant about 2:00 o'clock in the morning of November 6; that he answered, in a way, the description of a person wanted for arson; that he followed defendant and saw him enter an alley in the rear of the C. I. P. S. building, and that he intercepted him after he came out of the

alley and placed him under arrest and searched him. An old newspaper was wrapped around the bomb and a clipping from a Peoria paper. Defendant told Walker that he had found the bomb in the alley and intended to turn it over to the authorities and claim a purported reward of one hundred dollars. Walker was under the uncertain impression that defendant was carrying a bundle when he first saw him. A merchant policeman testified that he saw defendant carrying a newspaper-wrapped bundle at 12:50 A. M. The State produced no direct testimony to show that defendant intended to use the bomb for an unlawful purpose.

Defendant testified that before coming to Springfield he had been in Detroit and Peoria. He had been in Springfield two days, seeking work. The first night he slept in a box-car and the second night on the floor in the headquarters of the Progressive organization. He said that on the night of his arrest he had started out on a drinking bout with a companion whom he called "Lefty." Some of the funds for the purchase of whisky were obtained by the two begging on the streets. Defendant said the whisky was bought in half-pint bottles, which they would secrete in the alley. The two became separated and defendant drank a couple or more half-pints without assistance. He said he wanted more whisky, so he went down the alley looking for the hidden liquor. He reached down beside a telephone pole back of the C. I. P. S. building, where he said he found a package wrapped in a newspaper. He carried his find to the street and after an examination he surmised he might have a bomb. He said he desired to make sure, so he started towards some railroad tracks and was arrested by Walker. He admitted that he had been sent to prison in Michigan on account of trouble in Detroit. The People introduced testimony to show that when defendant was arrested and brought to the station he was sober, did not smell of liquor and did not show indications

of being under its influence. Examination of the testimony of defendant shows that he and his companion consumed a half-pint of liquor which, according to him, had been secreted in the alley, together with an additional pint. No more whisky was hidden in the alley, for he said his companion then left with fifteen cents given to him by defendant to get another pint and did not return. The story of defendant is conflicting, lacks plausibility and is.a weak tale of confession and avoidance.

It is principally argued that it was necessary for the People to show statements or declarations of defendant that he possessed the bomb with intent to use it in a manner calculated to injure or destroy life or property. *Hronek* v. *People,* 134 Ill. 139, and *People* v. *Robertson,* 284 id. 620, are cited to support this contention. These cases arose under the same section of the Criminal Code as the present case. In them this court held that the facts showed a criminal intent which it was incumbent upon the People to prove under the statute. It happened in both cases that the evidence of such criminal intent was direct and not circumstantial. In neither of the cases did this court lay down the rule contended for by defendant. We do not take issue with defendant that intent is a matter of fact and cannot be implied as a matter of law, but that does not prevent the proof of criminal intent by circumstantial evidence. Defendant in his brief states: "The intent with which the act is done is a question of fact, either to be shown by the declarations of the party *or to be inferred from the character, manner and circumstances of the assault."* He cites *Lathrop* v. *People,* 197 Ill. 169, and *Slattery* v. *People,* 76 id. 217. The statement and the citations are adversaries and not aids to his argument. Decisions of this court have clearly established the rule that criminal intent may be shown by circumstantial evidence. (*People* v. *McLaughlin,* 337 Ill. 259; *People* v. *Yuskauskas,* 268 id. 328; *Dahlberg* v. *People,* 225 id. 485; *McCoy* v. *Peo-*

*ple,* 175 id. 224; *Crosby* v. *People,* 137 id. 325.) In *People* v. *Buskievich,* 330 Ill. 532, we said no distinction should be made between direct and circumstantial evidence so far as the weight and effect thereof are concerned. While mere possession will not lead to an inference of criminal intent as a matter of law, the structural nature of the bomb, the transparent tale of how defendant happened to be in possession of it, the many inconsistencies in his testimony, his confessed character, and the other circumstances, including the labor troubles, and his presence, armed with a bomb, in the vicinity of the coal company's office at such an unusual hour, were circumstantial evidence from which the jury might reasonably infer a criminal intent as a matter of fact.

Defendant also claims that the trial court erred in overruling his motion for a new trial on the ground that one of the jurors was disqualified and made false statements on his *voir dire* with reference to his being employed at a Peabody mine. The court below, after considering the affidavit of counsel for defendant and of the juror in question, as well as the further examination of the juror in open court, held this point was without merit. The mere fact that the juror, Britton, was employed at the Peabody mine did not disqualify him as a juror. This would only have been, at most, a ground for the exercise of a peremptory challenge on behalf of defendant. After a careful review of the evidence and affidavits presented to the trial court in this regard, we cannot say that the denial of the motion for new trial constituted prejudicial error in this case.

The judgment is affirmed.                *Judgment affirmed.*