R. J. KALTENBORN, Doing Business as GENERAL
AUTO PARTS, and DUANE KEMP, Appellants,
*v.* CLAYTON E. BAKERINK, Respondent.

No. 4641

January 24, 1964                                    388 P.2d 572

*Morse & Graves,* of Las Vegas, for Appellants.

*Lionel & Gunderson,* of Las Vegas, for Respondent.

# OPINION

By the Court, MᴄNᴀᴍᴇᴇ, J.:

This is an action for damages resulting from the alleged negligence of the defendants (appellants herein). The jury rendered a verdict of $58,000 for respondent and judgment thereon was entered. Thereafter, appellants moved for a new trial in part upon the ground of "misconduct of the jury." The motion was based on the affidavit of William R. Morse, one of the attorneys for appellants, and the oral testimony of Edward I. Cohen, foreman of the jury.

Appeal is from the judgment and from the denial of appellants' motion for a new trial.

It appears from the Morse affidavit that after the jury returned its verdict and while Cohen was leaving the courtroom, Morse inquired of Cohen "upon what basis the jury arrived at its verdict"; that Cohen replied, "it was a simple matter; that he had each member of the jury write upon a piece of paper the amount of money each one of them thought that Plaintiff should be entitled to recover; that he thereafter totalled the amounts and divided by twelve and that said sum of $58,000.00 was the result of such computation."

The transcript of the proceedings on the motion for new trial shows that appellants offered in evidence the Morse affidavit in support of the motion. The record is silent however whether the court received it in evidence. Cohen was then called as a witness for the movants. Over the objection of respondent he testified as follows:

"Bʏ ᴛʜᴇ Wɪᴛɴᴇss: A. When we got the case we walked into the Jury room and we sat down and they elected me as the foreman. Now, each Juror, we talked it over about the case. One Juror wanted to give so much and the other Juror wanted to allow so much and this

and that. I asked the rest of them what they were going to do. One of the Jurors suggested that we take what expenses he had with the doctors and the hospital, how much he would have earned as a heavy duty operator, and what he is earning now, take the figure that he is asking and lump it all together, and then each Juror divide it by 12 and find out what the verdict would be. Now, the first time we went around, one of the Jurors I remember, said the verdict was too little. Another Juror said it was too big. In other words we went around about 3 or 4 times before we finally arrived at the figure that you have there, which I understand they cut off the salary that he would have earned as a heavy duty operator and figured the salary he is earning now as business agent for the Union and then we put together his hospital bills and everything and then we came to that figure.

"BY MR. MORSE: Q. Now, isn't it a fact that you had them write down on a slip of paper what they thought he was entitled to?

"A. Yes sir.

"Q. And then you added that up and then you divided it by 12 and that figure was $58,000.00?

"A. Yes, that's right, sir.

\* \* \* \* \*

"BY MR. MORSE: Q. It was agreed on by the Jury to find their verdict by this means?

"A. Yes."

On cross-examination Cohen testified as follows:

"BY MR. LIONEL: Q. Mr. Cohen, isn't it true the Jury considered for some time the amount of damages?

"A. Yes, we talked it over.

"Q. And there was quite a disparity between yourself and various members of the Jury?

"A. That's right, sir.

"Q. About how many times did you go around and write figures on paper?

"A. We went around, as far as I can remember, I think about 5 or 6 times we went around.

"Q. And all Jurors wrote down a different figure?

"A. Wrote down different figures and talked it over.

"Q. And you say finally there was a figure that was divided by 12. Is that right?

"A. That's right.

"Q. And isn't it true that that figure that the people wrote down was divided by 12 and you or one of the Jurors said 'Let's see what will happen if we do this'?

"A. That's right, yes.

"Q. Exactly what was said at that time?

"A. Well, as far as I can remember, one of the ladies of the Jury said that if we give too much, too big of a verdict, we are punishing the insurance company. I spoke up and I said that nobody is being punished. All we were there for was one reason and that was to give the man what he was entitled to. Then we tore up the slips of paper that we had wrote previous to this question and we went around again and when we got to the second time, as far as I can remember, one of the fellows, a gentleman there that was working for one of the air lines, said that the man wasn't entitled to that amount of money, that it seemed to him that nobody would earn that kind of money in a lifetime, so we talked over those things and then we went around two or three times more and finally, the last time we wrote the slips down, everybody read the slips and we added, totaled it up. Then is when we arrived at a verdict, the last time when we all came to that figure.

"Q. In other words as I understand it, there was about three times you did this and finally you reached a figure and then was it that price figure that you gave or was it increased or rounded off or anything?

"A. It was rounded out to come to an even figure.

"Q. And then after it was rounded off to come to an even figure, did the Jurors then vote on that figure? Did you vote on that figure?

"A. We all agreed to that figure, if that's what you call a vote.

"Q. I mean after that figure— (interrupt)

"A. After that figure was given, before we called for the Bailiff, we agreed on that figure.

"Q. And was that figure discussed?

"A. That figure was discussed and everybody agreed that they didn't think that was too much or too little."

In denying the motion for new trial it does not appear whether the court did so on the basis that the evidence was incompetent or because it was insufficient.

In Lee v. Clute, 10 Nev. 149, 153, this court has said: "The rule, as stated in many of the decided cases, is to the effect that if the jurors previously agree to a particular mode of arriving at a verdict, and to abide by the contingent result at all events, without reserving to themselves the liberty of dissenting, the verdict should be set aside; but if the method is adopted merely for the sake of arriving at a reasonable amount without binding the jurors by the result, the verdict should stand. (citations)

"The cases where verdicts have been set aside proceed upon the theory that if upheld, where jurors bind themselves in advance, it might lead to great injustice, because it would enable one inveterate juror, by marking down a very large or small sum, to produce an average and procure a verdict for an amount which would be unreasonable, and at utter variance with the judgment of the other jurors. This would be a chance verdict, and whenever such misconduct is properly shown, the verdict ought to be set aside. In every case the verdict ought to be the result of reason, reflection and conscientious conviction. Nothing should be determined by accident, hazard, chance or lot. It is, however, very natural that in cases where there is no ascertained demand, there will often be found a difference of opinion as to the proper amount to be allowed. It seldom happens that twelve men are found who will at once agree upon the precise sum, and mutual concessions have to be made before a verdict is arrived at. Where this difference of opinion exists, and the jurors adopt the method selected in this case, if each juror marks down the sum which he thinks is correct and right, the result would fairly express the average judgment of the jury, and this mode

of harmonizing upon the verdict would be just as pure and innocent as if effected 'by word of mouth.' "

In this connection the court in that case quoted with approval the following statement of Chief Justice Kent: "The charge here is not that the jury cast lots whether they should find for the plaintiff or defendant, but only that, in ascertaining the amount of the damages, they took the average sum deduced from the different opinions of each other. This has no analogy to the case of casting lots, or determining by chance for whom they shall find. The liquidation of damages must always, in a certain degree, be the result of mutual concession, since the amount of the injury is not susceptible of being ascertained with mathematical precision. If this mode of collecting the medium of their different opinions was fraudulently abused by any of the jury, by fixing on a sum intended to be extravagantly high or low, and which was not given in good faith, it would, perhaps, justify our interference; but no such fraud appears, or is to be presumed, in the present case. I do not, therefore, think that this mode of ascertaining the average sum was, in itself, exceptionable, and if, when ascertained, it appeared to the jury to be a reasonable sum, under all the circumstances of the case, connected with sentiments of respect and conciliation for each other's opinions, I think it was not improper for them finally to adopt that sum."

The substance of the statement made by jury foreman Cohen which forms the basis for the Morse affidavit, was by Cohen's oral testimony under oath developed in greater detail. From this oral testimony it is apparent that the jurors did not agree in advance to be bound by the average judgment of the jurors. In fact just the contrary appears. The first 5 or 6 times that an average amount was determined some of the jurors would not agree to the result. When $58,000 was computed, "that figure was discussed and everybody agreed that they didn't think this was too much or too little."

We are of the opinion that the situation presented in this case comes squarely within the rule expressed in Lee v. Clute, supra. See also Southern Nevada Gold & Silver Min. Co. v. Holmes Min. Co., 27 Nev. 107, 73 P. 759, 103 Am.St.Rep. 759 (concurring opinion).

In concluding that the lower court acted properly in denying appellants' motion for a new trial for the reasons stated, and that is the only error assigned on appeal, we do not in any way imply that the Morse affidavit or the oral testimony of a juror properly can be received in evidence to impeach the jury's verdict. The case of Southern Nevada Gold & Silver Min. Co. v. Holmes Min. Co., supra, has settled the law in this state that such evidence is incompetent. See also the later cases of Close v. Flanary, 77 Nev. 87, 360 P.2d 259; Pinana v. State, 76 Nev. 274, 352 P.2d 824; Priest v. Cafferata, 57 Nev. 153, 60 P.2d 220.

Judgment and order denying new trial affirmed.

BADT, C. J., concurs.

THOMPSON, J., concurring:

I join in the opinion of the court, but wish to add a comment. This case presents a head-on collision between two common law rules, and we must choose which one is of the greater significance in the administration of justice. We have heretofore recognized the rule which condemns a civil damage verdict reached by means of the quotient process. Lee v. Clute, 10 Nev. 149; So. Nev. M. Co. v. Holmes M. Co., 27 Nev. 107, 73 P. 759. Also, we have frequently announced and applied the rule, in civil and criminal cases, that a juror will not be allowed to impeach the verdict returned. State v. Stewart, 9 Nev. 120; State v. Crutchley, 19 Nev. 368, 12 P. 113; So. Nev. M. Co. v. Holmes M. Co., supra; Priest v. Cafferata, 57 Nev. 153, 60 P.2d 220; State v. Lewis, 59 Nev. 262, 91 P.2d 820; Pinana v. State, 76 Nev. 274, 352 P.2d 824; Close v. Flanary, 77 Nev. 87, 360 P.2d 259. The reasons supporting each rule are well known and need not be restated. It is apparent that in most cases a breach of

the doctrine condemning quotient damage verdicts can become known to a court only by permitting a violation of the rule against verdict impeachment by jurors. It seems to me that the rule against verdict impeachment is of more importance, and must win, when the two principles come into conflict. This result does not render the rule against quotient damage verdicts without meaning and substance. That rule may still properly be the basis for an appropriate jury instruction, if requested by counsel.