CURTIS A. McNALLY, APPELLANT, v. DAVID J.
WALKOWSKI, RESPONDENT.

No. 5771

December 18, 1969                    462 P.2d 1016

*Gordon W. Rice,* of Reno, for Appellant.

*Vargas, Bartlett & Dixon* and *John C. Renshaw,* of Reno, for Respondent.

## OPINION

By the Court, MOWBRAY, J.:

This appeal challenges the rule announced by Lord Mansfield in Vaise v. Delaval, 1 Term. Rep. 11 (K.B. 1785), that a juror's statement may not be admitted to impeach a verdict in which the juror participated.

McNally was injured in a single-car-turnover accident. Walkowski was the driver of the vehicle in which McNally was riding as a passenger. McNally sued Walkowski for damages. The case was tried to a jury, and a 9–3 verdict was returned for Walkowski.

One of the nine majority jurors telephoned McNally's counsel the day following the trial and complained of the manner

in which the jury had reached its verdict. Counsel secured the juror's affidavit and offered it, with four other, almost identical affidavits, in support of McNally's motion for a new trial. The trial judge refused the affidavits on the traditional ground that a juror's statement may not be received to impeach the jury's verdict, and he denied McNally's motion for a new trial. Hence this appeal.

The early common law set up no barrier against the receipt of jurors' testimony or affidavits to impeach their verdict. 8 J. Wigmore, Evidence § 2352, at 696 (McNaughton Rev. 1961). The barrier, apparently insurmountable in its original form, however heinous or reprehensible the misconduct of the jury, originated with Lord Mansfield's decision in Vaise v. Delaval, supra. Lord Mansfield said:

"The Court cannot receive such an affidavit from any of the jurymen themselves, in all of whom such conduct is a very high misdemeanor; but in every such case the Court must derive their knowledge from some other source, such as some person having seen the transaction through a window or by some such other means."

The exclusion, thus first based upon a policy against self-stultification, in later decisions, particularly of American courts, was also based upon a policy to avoid tampering with jurors, perjury, and other such fraudulent practices.[1] A storm of criticism soon surrounded the indiscriminate application of the rule, particularly in fact situations where it patently worked injustice. Its critics invariably pointed out its inconsistency from an evidentiary standpoint, in that it permitted a bailiff or other court officer who had been spying on the jury to testify as to misconduct but rejected the testimony of those who really knew what had occurred. Wigmore, supra, § 2353, at 698–702.[2]

---

[1] 15 Texas L.Rev. 101, 102 (1936).

[2] One of the complaints voiced by those who oppose any relaxation of Lord Mansfield's Rule is that it will encourage litigants and their counsel to question and harass jurors after their verdict in the hope of finding some misconduct on the jurors' part. (Such was not the fact in this case, as the juror voluntarily contacted appellant's counsel.) Indeed, the House of Delegates of the American Bar Association adopted in August 1969 a Code of Professional Responsibility. Rule 7–108 of the Code, which we heartily approve, provides in Paragraph (D):

"After discharge of the jury from further consideration of a case with which the lawyer was connected, the lawyer shall not ask questions of or make comments to a member of that jury that are calculated merely to harass or embarrass the juror or to influence his actions in future jury service." (Footnote omitted.)

Nevada, as the majority of American jurisdictions, has steadfastly adhered to Lord Mansfield's Rule.[3] See Wilson v. Perkins, 82 Nev. 42, 409 P.2d 976 (1966); Kaltenborn v. Bakerink, 80 Nev. 16, 388 P.2d 572 (1964); Close v. Flanary, 77 Nev. 87, 360 P.2d 259 (1961); Pinana v. State, 76 Nev. 274, 352 P.2d 824 (1960); State v. Lewis, 59 Nev. 262, 91 P.2d 820 (1939); Priest v. Cafferata, 57 Nev. 153, 60 P.2d 220 (1936); Southern Nev. Mining Co. v. Holmes Mining Co., 27 Nev. 107, 73 P. 759 (1903); State v. Crutchley, 19 Nev. 368, 12 P. 113 (1886); State v. Stewart, 9 Nev. 120 (1874). Formidable as our rulings might be, we are not unmindful that cases may arise in which it would be impossible to refuse jurors' statements without violating "the plainest principles of justice."[4]

In other jurisdictions the courts themselves have announced an exception to their own exclusionary rule rejecting jurors' affidavits to impeach their verdict. Although a litigant was unsuccessful at the turn of the century in urging that a valid distinction existed between a juror's misconduct before retirement and his misconduct after retirement [Siemsen v. Oakland, S.L. & H. Elec. Ry., 66 P. 672 (Cal. 1901)], chronology later became a paramount consideration. When an affidavit was offered in a later case to show that a juror had witnessed the disputed accident, had formed an opinion about liability, and had falsely denied on her voir dire examination that she had any knowledge of the event, the court held that the affidavit should have been received. Williams v. Bridges, 35 P.2d 407 (Cal.App. 1934). In that case the court said that the exclusionary rule applies to words or acts that are inherent in the verdict and that have their origin after the impanelment and before the discharge of the jury. The bar does not apply, the court held, to an affidavit which demonstrates a previous positive misconduct in concealing actual bias on the voir dire examination. See Shipley v. Permanente Hospitals, 274 P.2d

---

[3]See 8 J. Wigmore, Evidence § 2354, nn. 1 & 2, supra, where it is asserted that the exclusionary rule prevails in all but 11 states. The states which have relaxed the rule follow variants of the so-called "Iowa Rule" as announced in Wright v. Illinois & Miss. Tel. Co., 20 Iowa 195 (1866).

[4]Chief Justice Taney said, in United States v. Reid, 53 U.S. (12 How.) 361, 364 (1851):

"It would perhaps hardly be safe to lay down any general rule upon this subject [whether the affidavits of jurors impeaching their verdict should be received]. Unquestionably such evidence ought always to be received with great caution. But cases might arise in which it would be impossible to refuse them without violating the plainest principles of justice."

53 (Cal.App. 1954); Kollert v. Cundiff, 329 P.2d 897 (Cal. 1958) (disapproving other statements in Shipley).

In State v. Hayden Miller Co., 116 N.W.2d 535, 539 (Minn. 1962), the court said:

"We are not concerned here with the well-recognized principle that affidavits of a juror or any other person relating to what a juror has said will not be received to impeach the verdict where the facts sought to be shown inhere in the verdict itself. . . . The privilege which protects the deliberations of the jury from exposure does not extend to statements of jurors who may have on voir dire concealed prejudice or bias which would have disqualified them or to misconduct of a juror in making an independent inspection of the property in question contrary to the court's instructions. . . ."

In Department of Pub. Works & Bldgs. v. Christensen, 184 N.E.2d 884, 887 (1962), the Illinois Supreme Court ruled:

"The Department takes the position that jurors' affidavits may not be used to impeach their verdict, relying on Sanitary District of Chicago v. Cullerton, 147 Ill. 385, 35 N.E. 723 [1893]. Although this doctrine is generally recognized, it is subject to an exception when it is charged that a juror has answered falsely on voir dire about a matter of potential bias or prejudice. People v. Beacham, 358 Ill. 373, 193 N.E. 205 [1934]; Maher v. New York, Chicago and St. Louis Railroad Co., 290 Ill.App. 267, 8 N.E.2d 512 [1937]; West Chicago Street Railroad Co. v. Huhnke, 82 Ill.App. 404 [1899]; 8 Wigmore on Evidence, section 2354 at n. 5 [3d ed. 1940]; Annot. 48 A.L.R.2d 964 [1956]."

This is the precise argument advanced by McNally on this appeal. McNally contends that the jurors were not truthful when examined on voir dire, that they intentionally concealed their bias and prejudice, and that as a result he was denied his constitutional right to a fair trial. The right to trial by jury, if it is to mean anything, must mean the right to a fair and impartial jury. Piehler v. Kansas City Pub. Serv. Co., 211 S.W.2d 459 (Mo. 1948). A litigant is therefore entitled to a jury composed of 12 impartial jurors; although a civil case may be decided by the vote of three-fourths of that number, a party has the right to have that decision, whether for or against him, based on the honest deliberations of 12 such individuals. Lee v. Baltimore Hotel Co., 136 S.W.2d 695 (Mo. 1939); Annot., 127 A.L.R. 711 (1940). It is fundamental that a prospective juror is not the judge of his own qualifications. And to the end that a party may intelligently exercise

his challenges, it is the duty of a juror on voir dire examination to fully, fairly, and truthfully answer all questions directed to him. Therefore, a juror's intentional concealment of a material fact relating to his qualification to be a fair and impartial juror in the case may require the granting of a new trial. Woodworth v. Kansas City Pub. Serv. Co., 274 S.W.2d 264 (Mo. 1955).

In the final analysis, the determination of what result should follow the failure of a juror to answer fully a question touching upon his qualification turns upon whether or not he was guilty of an intentional concealment. The determination of that question must be left with the sound discretion of the trial court. Reich v. Thompson, 142 S.W.2d 486 (Mo. 1940), Annot., 129 A.L.R. 795 (1940).

In the instant case the record reveals that on the date of the accident the parties were returning from a visit to a house of ill fame. The jurors were asked by counsel on voir dire: ". . . Now I believe there will also be evidence that these young men were coming back from a house of ill repute at Wadsworth. Is there anything, if this evidence comes before you, which might prejudice you one way or the other for or against Mr. McNally or Mr. Walkowski?

"You feel, then, that you can take this evidence and weigh it, along with all the rest, and just the fact that they were coming back from a house of prostitution, that this would not influence you in your deliberations, except as it is related to you by the court's instructions?

"I think those are all my instructions that I have at this time, your Honor. Thank you very much."

The jurors' affidavits tendered by McNally all asserted: "Our deliberations had barely commenced when several jurors said they believed plaintiff [McNally] was wrong in showing defendant [Walkowski] the way to the Wadsworth house of ill fame; and that he should therefore not be permitted to recover." It is true that the jurors' affidavits failed to state the names of the jurors making such declarations, but such failure, as well as the general nature of the affidavits, presented a "question of weight solely for the trial judge." Shipley v. Permanente Hospitals, supra.

We conclude, therefore, that the jurors' affidavits were admissible for the limited purpose of showing concealment of actual bias by several of the jurors on their voir dire examination. We are merely relaxing Lord Mansfield's rule so that the

district judge may receive and consider the jurors' affidavits. By such ruling we do not intimate any view regarding the weight to be given the affidavits nor the merits of McNally's motion for a new trial.

"The allowance or refusal of a new trial rests in the sound discretion of the court to which the application is addressed, . . . [I]n the case at bar the District Court excluded the affidavits, and, in passing upon the motion, did not exercise any discretion in respect of the matters stated therein." Mattox v. United States, 146 U.S. 140, 147 (1892).

Reversed and remanded.

COLLINS, C. J., and ZENOFF, J., concur.

THOMPSON, J., with whom BATJER, J., agrees, dissenting:

If the rule against verdict impeachment by a participating juror is to be modified in the manner suggested by the majority, this case is not the one to use for that purpose. The impeaching affidavits offered to the court for consideration fail to identify the jurors who allegedly made the statements establishing bias in contradiction to their responses given on voir dire examination. Absent that information, the party in whose favor the verdict was returned cannot respond satisfactorily. He should not be compelled to contact unidentified jurors in an effort to test the reliability of the impeaching affidavits. Neither should unidentified jurors have to respond to the general statements suggesting bias on the part of "someone." Indeed, the "several jurors" whose qualifications are questioned must be named if they are to be afforded a fair opportunity to respond directly to the charges made, and if the court is to be given a solid foundation upon which to decide the matter. The rule modification announced today will produce unnecessary mischief since it may be utilized when the record fails to reveal the identity of the jurors whose integrity is challenged.

Respectfully, we dissent.