STATE OF NEVADA, Respondent, *v.* JAMES W. KELLY, Appellant.

When there is any probability that a juror is disqualified, and the Court is unable to determine it by reason of its inability to establish the fact constituting such disqualification, it is not required to hazard the regularity of its proceedings by permitting such person to sit as a juror, but may excuse him at any time before he is charged with the case.

Appeal from the First Judicial District of the Territory of Nevada, Storey County, Hon. J. W. North presiding.

The defendant was indicted for murder by the Grand Jury of Storey Conty, and upon the trial it appeared that one Bettinger, having entered the saloon of defendant for the purpose of collecting a bill of him, a dispute arose between them, and defendant reached under the bar and took out a pistol and struck Bettinger on the head with it. Bettinger, in the scuffle with the defendant, got behind the bar; the defendant then aimed the pistol at him, and said if he did not come out from behind the bar he would kill him. Bettinger, avoiding the pistol, caught the defendant, and in the struggle which ensued the pistol was discharged and the bullet lodged in the body of the deceased, inflicting a wound from which he died. The jury found the defendant guilty of manslaughter.

The Court instructed the jury as follows:

"Involuntary manslaughter shall consist in the killing of a human being without any intent so to do ; in the commission of an unlawful act, or a lawful act which probably might produce such a consequence in an unlawful manner ; provided, that where such involuntary killing shall happen in the commission of an unlawful act, which in its consequences naturally tends to destroy the life of a human being, or is committed in the prosecution of a felonious intent, the offense shall be deemed and adjudged to be murder.

"If the jury find from the evidence that James Kelly, on or about the time alleged in the indictment, received a mortal wound of which he died, in Storey County, within a few days thereafter, caused by a shot from a pistol in the hands of defendant, and that said pistol was discharged accidentally ; yet if they find that defendant was exhibiting said pistol in a rude, angry and threatening manner, and not in necessary self-defense, and that such act in its consequences naturally tended to destroy the life of a human being, then they may find defendant guilty of murder.

"If the jury find from the evidence that James Kelly, on or about the time alleged in the indictment, received a mortal wound of which he died, in Storey County, within a few days thereafter, caused by a shot from a pistol in the hands of defendant, and that said pistol was discharged accidentally, yet if they find that defendant was exhibiting said pistol in a rude, angry and threatening manner, and not in necessary self-defense, then they may find the defendant guilty of manslaughter."

Upon the impanelling of the jury, John Gillig, a juror on the regular panel was called, and upon being asked if he was one of the Grand Jury who found the indictment against defendant, replied that he did not know. The Court thereupon ordered the Clerk to examine the record of the Court to ascertain the fact. After a search of about five minutes, and not being able to ascertain whether he was one of the Grand Jury, the Court excused the juror, the defendant's counsel excepting.

*Taylor & Campbell*, Attorneys for Defendant.

The Court erred in excusing the juror, John Gillig. Our Criminal Code provides that trial juries for criminal actions shall be formed in the same manner as trial juries for civil actions. (Laws of Nevada, 1861, p. 468, sec. 314.)

In civil cases the statute provides that the Clerk shall draw from the box twelve names, and the persons whose names are drawn shall constitute the jury. (Laws of 1861, 340, sec. 159.)

We contend the Court is bound to follow the directions of the statute, and that therefore the defendant had a right to be tried by the panel, no ground of challenge or disqualification being shown. (*Haines* v. *State*, 8 Humph., Tenn. 597; *Bates* v. *State*, 19 Texas, 122; *Bates* v. *The State*, 24 Mass. 445; and see *Commonwealth* v. *Stowell*, 9 Met. 576; *Grady* v. *Early*, 18 Cal. 110.)

The Court misdirected the jury in matters of law in instructions given at request of Prosecuting Attorney.

All instructions must be given with reference to and in accordance with the facts proven in the case. (*People* v. *Hurley*, 8 Cal. 390; *People* v. *Honshell*, 10 Cal. 87; *People* v. *Arnold*, 15 Cal. 482; *People* v. *Sanchez*, 24 Cal. 28.)

*Dighton Corson*, District Attorney, for The People.

No brief on file.


Opinion by LEWIS, C. J., full Bench concurring.

All presumptions being in favor of the regularity of the proceedings of the Court below, we cannot say that it erred in excusing the juror John Gillig. He did not himself recollect whether he was on the Grand Jury who found the indictment against the defendant or not, and it appears that the record by which that fact might be ascertained could not be found. Had Mr. Gillig been one of the Grand Jurors who found the indictment, it would have been error to have allowed him to act upon the trial jury in this case, and if that fact was shown after verdict, it would have necessitated a new trial. When there is any probability that a juror is disqualified, and the Court is unable to determine it, by reason of its inability to establish the fact constituting such disqualification, as in this

case, it is not required to hazard the regularity of its proceedings by permitting such person to sit as a juror, but may excuse him.   It is claimed, however, that sufficient search was not made for the record; but that is a fact which cannot be determined here, for the reason that the Judge below may have as clearly satisfied himself by a search of five minutes duration as he might in five days, that the record could not be found, and as that was a matter resting entirely in his discretion, and as there is no evidence to the contrary, we must presume that everything that the exigency of the case required was done.

Indeed, it seems that in cases of this kind, the right of the Court to discharge a juror at any time before he is sworn and charged with the cause, is fully sustained by the authorities. (2 Graham & Waterman on New Trials, 192; *Stewart* v. *The State*, 1 McCook's Ohio R., 66; *United States* v. *Cornell*, 2 Mason, 91; *Haines* v. *The State*, 6 Humph. R. 597.)

In the case of *The States* v. *Cornell*, Judge Storey uses the following language:

"Even if a juror had been set aside by the Court for an insufficient cause, I do not know that it is a matter of error if the trial had been by a jury, duly sworn and impanelled, and above all exception.   Neither the prisoner nor the Government in such a case have suffered any injury."

The second assignment of error is, the giving of instructions four, six and seven, asked by the prosecution.

Instruction four is a literal copy of section 21 of the Act concerning crimes and punishments, laws of 1861, and certainly was not impertinent to the facts as they appear upon the record.   Instructions six and seven also seem equally free from exception, and correctly placed the law of the case before the jury.

All the language used by the Judge below, in his charge to the jury, to which defendant takes exception, was employed only in a hypothetical case, used in explanation of the crime with which the defendant was charged, and could in no wise prejudice him in the minds of the jury.   The sentence "A ruffian out of mere wantonness, firing into a crowd upon a sudden motion, is as guilty as if he had lain in wait for his

victim," had no reference to the defendant. The language was only used in defining the crime with which he was charged, and was necessary to enable the jury to determine whether the facts in this case constituted such crime.

There is a material distinction between the case of *The People* v. *Williams* 17 Cal. 147, and the one at bar. In tha tcase language was used by the Judge at *nisi prius*, which might have been taken as an indication of his conviction of the prisoner's guilt. The deceased was spoken of as the "victim" of *the defendant*. The judgment, however, was not reversed upon that point. But no such expressions are used in this case with reference to the defendant, and there seems to be nothing to indicate the opinion of the Court below as to his guilt or innocence.

Judgment affirmed.