BIAS vs UNITED STATES.

Opinion Delivered October 26, 1899.

*1. Juror excused by Court on its own Motion—Record—Presumption to Sustain.*

> When the record shows that the court of its own motion excused certain jurors, but does not give the grounds upon which they were excused, it will be presumed that the court had sufficient grounds for its action.

*2. Murder—Evidence Sufficient to Sustain Verdict.*

> Defendant while on horse back met deceased, and they became engaged in an altercation. Defendant testified that he dismounted from his horse and engaged in a fist fight with

deceased. Deceased drew a knife and thereupon defendant picked up a stick and struck him on the head. Deceased closed his eyes and fell. Defendant took deceased's knife from him, while he was still unconscious, and cut his throat. *Held*, Sufficient to sustain a verdict of murder.

3. *Murder—One Degree—What Verdict must Find.*

There is only one degree of murder in the Indian Territory, but the jury must find the defendant guilty of "murder" or guilty of "murder without capital punishment."

4. *Improper Conduct of Counsel—Review.*

Objections to misconduct and improper language of counsel, which are not excepted to at the time will not be considered on appeal.

5. *Exception to Instruction—Too General.*

An exception "to the entire charge for obvious reasons" presents no question for review.

6. *Murder—Instruction as to Malice—Not Error.*

An exception to a charge on a trial for murder to the effect that malice "is not confined to ill will towards an individual, but is intended to denote an action arising from any wicked or corrupt motive." That "malice may be implied from any deliberate or unlawful act against another, if the unlawful act be of such character as to show an abandoned and malignant disposition" is a proper statement of the law relating to malice.

7. *Murder—Instruction as to Manslaughter—Not Error.*

If the court instructs the jury in regard to manslaughter when under the evidence the only proper instruction should have been as to murder, it is an error in defendant's favor of which he cannot complain.

8. *Criminal Law—Review—Necessity of Exceptions.*

There is no distinction between criminal and civil cases with regard to the necessity of saving exceptions. It is just as necessary that error be properly excepted in a criminal case as in a civil case.

9. *Instruction—Exception to Whole Charge not sustained, if any Part Correct.*

When a charge contains several distinct propositions and the

exception covers all of them, if one of them is correct the exception will not be sustained.

Appeal from the United States Court for the Southern District.

HOSEA TOWNSEND, Judge.

Charles S. Bias was convicted of murder and he appeals. Affirmed.

At the March, 1898, term of the United States court for the Southern district of the Indian Territory, at Pauls Valley, the appellant was indicted for the crime of murder of one Gus Wright. The indictment alleges that the killing was done with a knife in the hands of the defendant. The wound was located on the neck of the deceased. In November, 1898, the defendant was tried, and convicted of murder, and sentenced to death. A motion for new trial was filed, overruled, and exceptions duly saved, and the cause regularly appealed to this court. The facts of the killing are: On the day of the homicide, the deceased, with several others, including the defendant, was at the house of one Joe Joseph. The deceased, remarking that he was going home to see his father, mounted his horse and started in that direction. Soon after the defendant remarked that he wanted to talk with the deceased, and for them to wait until he returned, then mounted his horse, and left in a trot or gallop; going in the same direction that deceased had gone. This was near sundown. The parties at the house waited for a half hour for defendant to return, but, failing to come, they went to the house of one Williams. After waiting there for about a half hour, the defendant rode up to the house, called one of the parties out, and told him that he had killed the deceased. When asked how he had done it, he said, "I cut his throat." The following morning (Sunday)

the deceased's body was found on the road, with the throat cut on either side and from ear to ear; the appearance showing some three or four cuts. There was a contused wound on the head, and another about one of the eyes. Near the body a club was found, with blood and hair adhering to it,— evidently the instrument making the wound on the head. At the trial the defendant testified in his own behalf. He admitted the killing. His version of it was that after he overtook the deceased on the road, and while they were talking about matters generally, the conversation led to a dispute between them as to whether the defendant had made certain remarks to Malcie Williams. Each accused the other of lying. They both got angry. In the language of the defendant: "He cussed me, and I cussed him back. He said: 'You are a damned liar. You did say it.' And I told him he was another; I didn't say it; and then he said, 'Get on the ground,' and he would whip me." Thereupon the two dismounted and entered into a fisticuffs fight, and, when the defendant was getting the better of deceased, he (deceased) drew a knife; and thereupon defendant picked up a stick and struck him on the head, which, he says, "stunned the deceased." "He closed his eyes and fell." He then took deceased's knife from him, and while he was still unconscious cut his throat in the places and manner before stated. He then threw the knife away, and went to Malcie Williams' house, and there told of the killing. The defendant was not cut or bruised in any manner.

*Moman Prueitt,* for appellant.

*W. B. Johnson, U. S. Atty.,* and *James E. Humphrey, Asst. U. S. Atty.*

CLAYTON, J. There are no assignments of error in this case. The motion for a new trial is as follows: "The defendant moves the court to set aside the verdict of the

jury and to grant him a new trial, and for grounds says: (1) The court erred in giving instructions to the jury over the defendant's objections and exceptions. (2) The court erred in excusing the jurors on its own motion. (3) The verdict of the jury is not sustained by the evidence. (4) The court erred in not instructing the jury as to the difference and distinction between murder in the first degree and murder in the second degree. (5) There was misconduct on the part of the government, in this: that the prosecuting attorney said, in addressing the jury, after all the evidence was introduced, 'This defendant is just such a man as the phrenologists and detectives pronounce as being by nature brutal, and you ought to do your duty by hanging him.' (6) There was misconduct on the part of the government, in this: that the assistant prosecuting attorney said in addressing the jury, after all the evidence was introduced, 'You must do your duty by hanging this man, and the government will not be satisfied with any verdict less than the death penalty.' (7) The verdict is contrary to law. (8) The verdict is contrary to the law and the evidence.'' While the learned counsel for the defendant seems to have failed to brief the objections raised by the motion for a new trial, except those which go to the charge of the court, we will briefly notice them, leaving the objection to the charge to be considered after we have disposed of the others.

The second exception is that the court erred in excusing jurors on its own motion    The record before us fails to show the grounds upon which the court excused the jurors. The only record before us relating to this is as follows: "After the jury had been impaneled, but before the witnesses were sworn, Mr Wood, of counsel for defendant, said: 'I desire to save exceptions to the court excusing certain jurors. The record will show who were excused for cause by the court on its own motion.' Mr. Johnson, U. S. Attorney: 'I want the record to show that the exception comes

after it was all over.' 'Mr. Wood: the exceptions came before the witnesses were sworn. Let the exceptions go that after the jury was sworn, and before the witnesses were sworn, we excepted to the ruling of the court in excluding on its own motion certain jurors for cause. The record will show who the jurors were.' Mr. Johnson: 'I have no objection to that.' '' There is nothing here on which this court can act. Nothing appears but the mere fact that the court, on its own motion, excused certain jurors. The presumption, of course, is that the facts before the court presented sufficient grounds for its action.

The third exception is that the verdict of the jury is not sustained by the evidence. If the court committed no error in its charge, the facts, as proven, were amply sufficient to sustain the judgment. It is not necessary here to analyze the evidence. We have set it out in brief. The defendant's own testimony is sufficient to sustain the verdict.

The fourth exception is that the court erred in not instructing the jury as to the difference and distinction between murder in the first and second degrees.

In the Case of Cyrus A. Brown (decided by us at our present term, the opinion in which was handed down in June) 2 Ind. Ter. 582 this question was fully considered, and decided against the contention of appellant. The question was again presented to us in the case of Helms vs United States, 2 Ind. Ter. 595 in which the decision in the Brown Case was adhered to. In the latter case, alluding to the Brown Case, we say: "In that case we decide that in this jurisdiction the statute of the United States relating to the crime of murder prevails; and as by that statute the crime is not divided into murder in the first and second degrees, as is done by Mansfield's Digest, juries here are not required to, and cannot by their verdict of guilty, find either of these degrees of murder, but must find either that

the defendant is guilty of murder, or of murder without capital punishment, as provided by the United States statutes relating to that crime." Under these decisions, the court did not err in not instructing the jury as to the different degrees of murder as found in Mansfield's Digest.

The fifth and sixth exceptions go to alleged misconduct on the part of the United States attorney and his assistant, in certain remarks made by them during the argument to the jury. While the language used may appear somewhat harsh, we cannot say that it constitutes reversible error, even if it had been excepted to at the time when uttered; but in this case no objections were made at the time, or exception saved. The objection is taken for the first time in the motion for a new trial, and this is too late.

Defendant's counsel, in their brief, confine themselves exclusively to a criticism of the charge of the court. The exception to the charge taken at the trial is as follows: "Defendant excepts specially to paragraphs 7, 8, and 15 of the court's instructions, for the reason that the act intended by the defendant is not confined by said paragraphs to felony. Death resulting, when the act is a misdemeanor, is not murder." "Defendant excepts specially to paragraph 25 of the court's instruction, for the reason that said paragraph implies that a person threatened with danger must retreat to the wall before taking a human life." "Defendant excepts to the entire charge given by the court, for obvious reasons." From the foregoing it will be seen that the only parts of the charge legally excepted to are paragraphs 7, 8, 15, and 25.

An exception "to the entire charge, for obvious reasons," is no exception at all. It is merely trifling with the courts, and presents no question for review.

For a proper understanding of paragraphs 7, 8, and

(4)

15 of the court's charge, which were excepted to, we deem it proper to set out all of that part of th charge which relates to malice and manslaughter. It is as follows: "(4) Express malice is that deliberate intent'on unlawfully to take away the life of a fellow creature which is manifested by external circumstances, capable of proof. (5) Malice is implied when no considerable provocation appears, or when all the circumstances of the killing show an abandoned or malignant heart. (6) Malice, in connection with the crime of killing, is but another name for a certain condition of a man's heart or mind; and, as no one can look into the heart or mind of another, the only way to decide upon this condition at the time of the killing is to infer it from the surrounding facts. (7) Malice includes, not only anger, hatred, and revenge, but every other unlawful and unjustifiable motive. It is not confined to ill will towards an individual, but is intended to denote an action arising from any wicked or corrupt motive,—anything done with a wicked mind, when the fact is attended by such circumstances as evinced plain indications of a heart regardless of social duties and fatally bent on mischief. (Exception saved.) (8) Hence malice may be implied from any deliberate and unlawful act against another, if the unlawful act be of such a character as to show an abandoned and malignant disposition. (Exception saved.) (9) Under the indictment in this case, which is for murder, you should find the defendant guilty of murder, if you find from the evidence and the law as given you in these instructions, beyond a reasonable doubt, that he is guilty; and if, upon consideration of all the evidence and the law, you entertain a reasonable doubt as to whether he is guilty, you should acquit him. (10) The deliberate and unlawful use of a deadly weapon by one person against the person of another implies malice in the mind of the person so deliberately and unlawfully using said deadly weapon. (11) The deliberate intention called 'malice aforethought'

need be only such deliberation and thought as to enable a person to appreciate and understand at the time the act is committed the nature of his act, and its probable results. To constitute malice aforethought, no particular time need intervene between the formation of the intention and the act. It is enough that, with the intention to commit the act, the appreciation of the result likely to follow appeared to the defendant at the time the act was committed. (12) The jury are instructed that under an indictment for murder a party accused may be found guilty of manslaughter, and in this case, if, after a careful and dispassionate consideration of all the proof and circumstances in evidence before you, you have any reasonable doubt as to whether the defendant is guilty of murder, then you should consider whether he is guilty of manslaughter; and if, from a full and careful consideration of all the evidence before you, you believe beyond a reasonable doubt that the defendant is guilty of manslaughter, you should so find by your verdict. (13) Manslaughter is the unlawful and felonious killing of another without malice, either express or implied. It may be voluntary or involuntary. (14) In cases of voluntary manslaughter, there must be a serious and highly-provoking injury inflicted upon the person killing, sufficient to excite an irresistible passion in a reasonable person, or an attempt by the person killed to commit a serious personal injury on the person killing. The killing must be the result of a sudden, violent impulse or passion, supposed to be irresistible; for, if there should appear to be an interval between the assault and the provocation given and the killing sufficient for the voice of reason and humanity to be heard, the killing should be attributed to deliberate revenge, and punished as murder. (15) Involuntary manslaughter consists in the killing of a human being, without any intent to do so, in the commission of an unlawful act, or a lawful act which probably

might produce such a consequence, in an unlawful manner. (Exception saved.)"

We cannot see but that paragraphs 7 and 8, taken either by themselves, or in connection with the balance of the charge, are a proper statement of the law. The seventh instruction is almost in the very language of Shaw, C. J., in the celebrated case of Com. vs Webster, 5 Cush. 304, which has been almost, if not quite, universally held by the courts and by the text-books to have been a proper enunciation of the law; and the eighth instruction is but an application, and a proper one, of the principle of law relating to malice, which the court was then expounding to the jury.

The fifteenth instruction, on involuntary manslaughter, was given by the court on the theory, we presume, that there was some evidence that the deceased might have come to his death by the blow from the club inflicted before the cutting of his throat with the knife. While the testimony to establish such a condition was exceedingly slight (so slight, indeed, that, had the instruction been omitted as inapplicable to the case, we would not have held it error), yet the testimony of one witness, relating to the contused wound on the head (the one evidently made by a club,) showed such a severe wound that the jury might possibly have concluded that it was the cause of the death of deceased, and that he died before the throat was cut, although the cutting immediately followed the blow; and to meet this proof the instruction was properly given, and, under the facts sought to be proven, the instruction properly gave the law. Blackstone defines "involuntary manslaughter" as follows: "Involuntary manslaughter differs also from homicide excusable by misadventure, in this: that misadventure always happens in consequence of a lawful act, but this species of manslaughter in consequence of an unlawful one. As if two persons play at sword and buckler, unless by the king's command, and one of them kills the other, this is

manslaughter, because the original act was unlawful; but it is not murder, for the one had no intent to do the other any personal mischief.  So, when a person does an act lawful in itself, but in an unlawful manner, and without due caution and circumspection,  *  *  *  this may be misadventure, manslaughter, or murder, according to the circumstances under which the original act was done." 4 Bl. Comm. 191. Wharton defines it as follows:  "Involuntary manslaughter is where death results unintentionally, so far as the defendant is concerned, from an unlawful act on his part, not amounting to felony, as from a lawful act negligently performed." Whart. Cr. Law, 305.  Anderson's Law Dictionary defines it to be "a killing in the doing of an unlawful act in itself, or a lawful act in an unlawful or careless way." The fifteenth instruction of the court is not substantially different from these well-approved definitions of the offense. But the objection is urged that the court did not go far enough, and tell the jury that if the unlawful act being committed by the defendant at the time of the unintentional killing, if such were established by the proof, was a felony, the crime would be murder.  It is true that such a killing would be murder, but what disadvantage could it possibly have been to the defendant that the jury were not so instructed? If the jury were given to understand that all unintentional killings growing out of the performance of an unlawful act are manslaughter and not murder, whether the unlawful act be a misdemeanor or a felony, if the unlawful act claimed were a felony, the charge could only be to the advantage of the defendant; and, if only a misdemeanor, the charge was correct, and no wrong was done him.  In this case, upon this theory, the unlawful act was that of voluntarily having entered into a fight with the deceased.  The act was not claimed to have been a felony.  The instruction was therefore a proper one.  The law of self-defense was fully and fairly submitted to the jury by the other parts of the charge.

This disposes of all of the exceptions taken at the trial, and presented by the record. The learned counsel, in his brief, however, raises and argues a number of questions pertaining to the charge which were not excepted to at the trial, except by the general one, to wit, "The defendant excepts to the entire charge given by the court, for obvious reasons." The exceptions to the charge in the brief, other than those specifically taken at the trial, amount to some 25 specifications of error; and, as to all except to a single point, not an authority is cited, or a quotation from a law book made. The excuse given is "that the objections urged against them are fundamental, and the law supporting them is elementary." With some 25 obvious and fundamental objections, supported by elementary law, the task presented to us would seem to be quite easy, but in this case we have not found it so. Notwithstanding the exceptions were not properly taken, we have, at some considerable expense of time and labor, fully examined the record and such authorities as were at our command, but have failed to discover that any of these exceptions were well taken, even if they had been properly saved. Indeed, the charge, in its entirety, seems to us to have been a full and clear exposition of the law of the case, and was as favorable to the defendant as the facts proven would admit of. From every aspect of the case, the crime of murder was clearly established against the defendant his trial was a fair one, and he was justly and legally convicted.

Upon the question of exceptions in a case of murder, there seems to be upon the part of the bar a prevailing idea that courts of appeal will notice and pass upon errors, whether exceptions are saved or not. Some of the cases before us, which otherwise seem to be ably tried, in this particular are in an infinitely worse condition than others involving property rights of not more than $50 or $100 in value. We know of no law which makes a difference

between a criminal and a civil case in this particular, and presume that the practice has grown up because of the disposition of courts of appeal to act leniently in cases involving human life, because of the magnitude of the issue. The issue, however, is not greater here than it was in the court below, and rests no more heavily on the shoulders of the court than on those of defendant's counsel. The very fact of the importance of the issue, it seems to us, should impel counsel engaged in the trial of these cases to be constantly on the alert, especially upon the point of saving their exceptions. One of the objects in making an exception specific and certain is that the judge of the trial court shall have it pointed out to him, that he may correct it then and there, or at least have an opportunity to do so. In the case of Holder vs U. S., 150 U. S. 90, 14 Sup. Ct. 10, the defendant had been convicted of murder. The exception to the charge was general. The supreme court say: "There was no pretense that the charge of the court * * * was erroneous in every part, and no exception to any particular part is shown. The rule is that general exceptions to a charge, which do not direct the attention of the court to the particular portions of it to which objection is made, raise no question for review " And the supreme court refused to consider those only pointed out by the brief. In Thiede vs Territory, 159 U. S. 521, 16 Sup. Ct. 62, which was also a murder case, the supreme court of the United States again lay down the rule by applying the rule theretofore laid down by that court in a civil case. Quoting from Beaver vs Taylor, 93 U. S. 46, the court say: "It is not the duty of a judge at circuit court, or of an appellate court, to analyze and compare the request and the charge, to discover what are the portions thus excepted to. One object of an exception is to call the attention of the circuit judge to the precise point as to which it is supposed he has erred, that he may then and there consider it, and give new and different

instructions to the jury, if, in his judgment, it should be proper to do so." In Hickory vs U. S., 151 U. S. 303, 14 Sup. Ct. 334,—a murder case,—the supreme court of the United States state the rule to be: "The rule in relation to exceptions to instructions is that the matter excepted to shall be so brought to the attention of the court before the retirement of the jury as to enable the judge to correct error, if there be any, in his instructions to them; and this is also requisite in order that the appellate tribunal may pass upon the precise question raised, without being compelled to search the record to ascertain it. And it also settled that where several distinct propositions are given, and the exception covers all of them, if any one of them is correct, the exception cannot be sustained." See, also, Allis vs U. S., 155 U. S. 122, 15 Sup. Ct. 36; Clune vs U. S., 159 U. S. 590, 16 Sup. Ct. 125. But, as heretofore stated, in this case we have considered the various points raised by the brief of the defendant, and are of the opinion that none of them can be sustained. Let the judgment of the court below be affirmed.

SPRINGER, C. J., and THOMAS, J., concur.