[No. 2499]

## M. M. PAGE, APPELLANT, *v.* THOMAS SUTTON, RESPONDENT.

[204 Pac. 881; 207 Pac. 1102]

1. APPEAL AND ERROR — ADMISSION OF NOTE OF DEFENDANT'S
PARTNER TO PAY HIS SHARE OF BROKER'S COMMISSION SUED
FOR HELD NOT PREJUDICIAL.

In action by a broker for a commission, where plaintiff
gave oral testimony that defendant's partner had given him
a note to pay the partner's share of the commission, the
admission of the note in evidence was not prejudicial.

2. NEW TRIAL.—EFFECT OF NOTE ESTABLISHED BY PARTY CANNOT
BE ATTACKED BY HIM ON MOTION FOR NEW TRIAL.

Where defendant's cross-examination established the exis-
tence of a note of defendant's partner to pay the partner's
share of a broker's commission, defendant may not question
the execution of the note on motion for a new trial.

3. APPEAL AND ERROR—GIVING LETTER TO JURY WITH EXHIBITS
HELD NOT PREJUDICIAL.

Where a broker suing for a commission testified on cross-
examination that defendant's partner had given him a note
to pay the partner's share of the commission, giving to the
jury by mistake a letter from the partner to the broker
acknowledging indebtedness for making the sale and the
execution of the note, in view of affidavits by the nine jurors
who returned the verdict that the jury was not influenced by
the letter, was not prejudicial.

4. BROKERS—BROKER HELD ENTITLED TO A COMMISSION FOR SALE OF MINING PROPERTY WHICH WAS TRANSFERRED TO CORPORATION ORGANIZED BY SELLER AND STOCK SOLD TO PURCHASER.

Where defendant agreed to pay plaintiff, a broker, a commission for selling mining property, and defendant and others organized a corporation which took over the property, and thereafter the stock therein, instead of the property, was sold for the same price to a purchaser with his associates whom plaintiff had interested in the property, plaintiff was entitled to the agreed commission.

ON PETITION FOR REHEARING

1. APPEAL AND ERROR—NO REVIEW OF QUESTION PRESENTED FOR FIRST TIME ON PETITION FOR REHEARING.

A question presented for the first time on petition for rehearing will not be considered.

APPEAL from Sixth Judicial District Court, Pershing County; *James A. Callahan,* Judge.

Action by M. M. Page against Thomas Sutton. Verdict for plaintiff. From an order granting a new trial, plaintiff appeals. **Order reversed. Petition for rehearing denied.**

*Robins, Elkins & Van Fleet,* for Appellant:

The admission of the promissory note was not error, it being an admission by persons beneficially interested in the result of the case. 22 C. J. 333.; 16 Cyc. 984. "Declarations against interest of a party beneficially interested in the result of a litigation are always admissible." Kinnane v. Conroy, 101 Pac. 223.

The reading of the letter by the jury was not harmful nor prejudicial. The affidavits of the jury show that it did not affect the result, they being all in support of the verdict. "That the paper in question reached the jury * * * will not justify a reversal, at least unless it be made to appear that the jury were improperly influenced by it." Leonard v. Schall, 146 N. W. 1104. "It seems to be the rule that the affidavits of jurors may be used to support the verdict when assailed, especially so when the affidavits relate to extrinsic matters, such as did not enter into or form a part of the deliberations of

the jury." Birmingham Ry. Co. v. Mason, 6 Am. & Eng.
Ann. Cas. 929. Where a paper which should not prop-
erly be with the jury during their deliberations has been
sent to the jury room through inadvertence or accident,
and not through connivance or design of the prevailing
party, the verdict will not generally be set aside on that
account. 16 R. C. L., sec. 113; 6 Am. & Eng. Ann. Cas.
931; Tover v. Judd, 62 N. H. 292; Maynard v. Fellows,
43 N. H. 259; Alcott v. Boston Co., 65 Mass. 93; Com-
monwealth v. Fisher, 134 Am. St. Rep. 1027; 1915B
Ann. Cas. 736; Higgins v. Los Angeles G. & E. Co., 159
Cal. 651; Swendson v. Pacific Electric Ry., 166 Pac. 21;
People v. Pyle, 185 Pac. 1019.

It makes·no difference whether the purchase of the
mining property was made through stock in a corpora-
tion or directly; it was all part of the same transaction,
which resulted in the respondent accomplishing the
object sought when he employed appellant. Tucker,
Lynch & Coldwell v. Hawley, 23 Cal. App. 463.

*Booth B. Goodman,* for Respondent:

A new trial was properly granted. "A judge who
tries a case should set.aside the verdict where there is a
clear preponderance of evidence against it." Philpotts
v. Blasdel, 8 Nev. 61. The verdict is contrary to the
evidence; the contract sued upon is secondary, and
within the statute of frauds. The promissory note was
improperly admitted, and the possession of the letter by
the jury was prejudicial, which was not cured by the
affidavits of the jurymen. "It is a general rule that such
affidavits are not admissible to impeach the verdict."
State v. Crutchley, 19 Nev. 368. "The general rule is
that it is prejudicial error and a ground for reversal to
permit the jury to take with them to the jury room
papers, not in evidence, which would tend to influence
the verdict; and it makes no difference that the papers
were given to the jury by mistake." 38 Cyc. 1834;
Birmingham Ry. Co. v. Mason, 6 Ann. Cas. 932; Ellcot

v. Luengene, 39 N. Y. S. 850; Rich v. Hayes, 54 Atl. 724. The stock of the corporation and the property owned by it are not substantially the same. "It is now universally held that shares of stock in a corporation are personal property, and by statute in this state are expressly made so. Page v. Walser, 43 Nev. 427. Plaintiff proved a contract concerning the physical property, and it matters not that the corporation later owned the identical property; its transfer divested title in the subject-matter of the contract. There is no evidence that respondent ever agreed to pay a commission on the sale of shares of stock. 5 Fletcher, Ency. Corp. 5614, 5626.

Plaintiff was not entitled to a commission. "To entitle a broker to commissions upon a sale or transaction which is actually consummated, he must show that his efforts and services were the primary, proximate, and procuring cause thereof." 4 R. C. L. 297; Earp v. Cummins, 54 Pa. 394.

By the Court, COLEMAN, J.:

This action was instituted by appellant to recover a judgment for commissions alleged to have been earned as a broker in procuring a purchaser for certain mining property situated near Mill City in Pershing County. The complaint contains two counts, one upon a contract and the other upon a quantum meruit for the value of services rendered.

Appellant contends that respondent represented that he was the owner of or controlled a group of mining claims near Mill City, Pershing County, Nevada, which he was desirous of selling, and that it was agreed between them that plaintiff should use his best endeavors to procure a purchaser therefor, and that in the event of his success the defendant would pay plaintiff a commission of 10 per cent upon the selling price; that plaintiff thereafter found a purchaser for said property, for the sum of $125,000; and that one Farreta, one of the defendant's coowners in the property, settled with the plaintiff by giving him a note for

$1,715.40, which is 10 per cent of the amount received by said Farreta for his interest. Judgment is demanded in the sum of $10,714.60, the difference between $12,500 (10 per cent of $125,000) and the amount settled for by Farreta. The jury returned a verdict in favor of the plaintiff for the sum demanded. The court granted defendant's motion for a new trial, and this appeal is taken from that order.

Several grounds were assigned in support of the motion for a new trial, but the court based its order upon two grounds only: First, for error in admitting in evidence the note executed by Farreta; and, second, because a letter written by Farreta, though not in evidence, was through mistake handed to the jury with exhibits in the case.

We think the court erred in granting the motion for a new trial, and in disposing of this matter we will first consider the position taken by the court wherein it held that error was committed in admitting in evidence the note executed by Farreta in payment for his share of the commission alleged to have been earned by the plaintiff as being the procuring cause of the sale. The evidence shows that the plaintiff was a man who had been engaged in mining for about thirty-seven years, and who had been instrumental in selling several mines; that in the fall of 1917 he was induced by a daughter residing near Mill City to go there that he might become acquainted with the mineral resources of the section, with a view of making a sale of some of the properties there located; that he was put in charge of the work carried on by the defendant upon his property, and near the first of 1918, being threatened with pleurisy, decided to go to his home in San Francisco until his health should be restored; and that the defendant took him from the mines to the railroad station at Imlay. The plaintiff testified that on the way to Imlay he broached to the defendant the subject of selling the property in question, and that the defendant then told him that he controlled the property, though there were some small

interests held by others, and that he would be willing to sell, and would allow the plaintiff 10 per cent commission if he found a satisfactory purchaser.

The undisputed evidence shows that in the latter part of January or early in February after plaintiff had recovered sufficiently to enable him to leave the house, he saw Mr. E. S. Shanklin, a mining engineer, whose assistance he solicited in finding a purchaser for the property, after which he returned to the property; that Mr. Shanklin agreed to assist in finding a purchaser, and pursuant thereto interviewed Mr. Wm. J. Loring, a mining man of San Francisco, and acquainted him with the Sutton property; that as a consequence of investigations and negotiations with Mr. Loring he (Shanklin) made a trip to inspect the Mill City property, and immediately tied up several properties (not including the Sutton property), and telegraphed and wrote Loring to come up and inspect the country; that Loring arrived at the Sutton property about March 5, and in company with plaintiff, Shanklin, and others, spent two or three days in looking over it and other properties; that on March 19, 1918, Loring wrote a letter to Shanklin, wherein he outlined a plan of organizing a company to take over various mining properties at Mill City, and specifically alluded to the "Sutton group," the property which it is alleged plaintiff was instrumental in selling. After Loring had inspected the properties, he went to Lovelock, where he met the defendant. Thereafter a company was organized by the defendant and others which took on the Sutton group, and some time subsequently thereto Loring and his associates purchased the stock in the company so organized for the sum of $125,000.

As stated, the foregoing facts are not disputed, except that the defendant denies having employed or authorized the plaintiff to find a purchaser for the "Sutton group." The defense made, in addition to this denial, is that

the sale which was made was brought about by one Segerstrom, rather than by the plaintiff.

The only question for the jury to determine was as to whether or not the contract of employment as alleged was shown, or, in case it did not so find, whether plaintiff rendered services in finding a purchaser for the property, of which the defendant had availed himself. There is no dispute as to the value of the services, if it be found that they were rendered.

We may say here that the affidavits of ten of the members of the jury were filed and considered upon the motion for a new trial, no one of which tends to show that the jury was in the least influenced by the letter in question, while nine of them emphatically state that they were not influenced by it. Of course, it is a well-known rule that a juror cannot be heard to impeach his own verdict; but we do not think the rule applies in this situation, as the affidavits did not tend to impeach it. Southern Nevada G. & S. M. Co. v. Holmes M. Co., 27 Nev. 107, 73 Pac. 759, 103 Am. St. Rep. 759.

1. Let us inquire whether the court did, in fact, err in admitting in evidence the Farreta note; and if so, whether the defendant was prejudiced thereby. The fact is that the plaintiff, in response to questions propounded by counsel for defendant, gave oral testimony to the effect that he had received a note from Mr. Farreta for his share of the commission. We quote from plaintiff's cross-examination:

"Q. How do you know that yourself? A. Because I heard it through Mr. Farreta; he told me himself that when Mr. Loring bought he put his pro rata toward the debts they owed.

"Q. Then you did have a talk with Mr. Farreta about this sale? A. That was the time when Mr. Farreta was in San Francisco and gave me the note, promissory note for $1,715. He told me he had no money to pay me, but he had agreed with Mr. Sutton to pay me the commission, and asked me if I would accept his note.

"Q. And isn't it a fact that at the time you accepted the note you said you merely wanted the note to use in the case against Mr. Sutton and would return it to him? A. I made no such remark.

"Q. Did Mr. Farreta pay the note? A. I understand since I came here that Mr. Farreta gave me a judgment for the note. I am not a lawyer, so I do not understand just what that means."

This witness also testified:

"A. Because at our meeting in San Francisco on Post Street, Mr. Farreta said that Mr. Sutton did say to them that he gave me a contract that he would pay me a commission, and that it was satisfactory to him, that he would pay it; that is why I demanded the money afterwards separately from Mr. Farreta."

2. There is much more testimony by this witness, brought out by counsel for defendant, relative to the note. In fact, as said by counsel for appellant, he seemed loath to abandon this line of inquiry. The execution of the note stands unquestioned and overwhelmingly established by the defendant himself. He could not on the motion for a new trial question its execution. By his own efforts he had shown its existence.

The existence of the note having been overwhelmingly established by the testimony brought out by counsel for the defendant, and that it had been executed for Farreta's share of the commission alleged to have been earned by the plaintiff, pursuant to an understanding with Sutton himself, we cannot see how it can be said that the note, which was but cumulative evidence of what had been proven by undisputed testimony upon the inquiry of counsel for defendant, could have prejudiced the defendant. The learned trial judge, in his written opinion, dwells upon the fact that counsel for the plaintiff, in the closing argument, "maintained in substance that since Farreta had performed his portion of the obligation flowing from the contract, there was

no reason why the defendant should not be compelled to pay the remainder of the obligation." No doubt counsel made most of this, but it was a fact shown by counsel for defendant on cross-examination, and remained undisputed. The same argument could have been urged with as much force, in view of such oral testimony, had the note not been introduced in evidence. The existence of the note having been overwhelmingly shown, without question, it would be going too far, in view of the entire record, to assume that the mere ocular evidence of such undisputed fact could have prejudiced the defendant.

3. We come now to consider the second ground upon which the court based its action in granting a motion for a new trial, namely, the fact that the Farreta letter was, through a mistake, handed to the jury along with the exhibits. This letter is nothing more than an acknowledgment by Mr. Farreta of his indebtedness to the plaintiff for his share of the commission upon the sale, and of the execution of the note referred to. The learned trial judge, in his written opinion, says:

"The nine jurors who found the verdict made affidavits to the effect that during all their deliberations, the balloting stood nine to two, nine to three, or eight to four in favor of the plaintiff, and that the verdict was not influenced by the letter; but it appears that during such balloting, the amount of the verdict was not considered until after the decisive ballot was taken."

It appears that the idea which influenced the court in considering this question was solely the amount of "damages" which should have been assessed by the jury. It may be that this position would be sound but for the fact that there was never a controversy as to the amount of the verdict; the real question was whether there should be a verdict in any amount, since the defendant denied all liability. Under all of the testimony, it is clear that if there should have been a verdict

in any amount, that named by the jury was the correct sum. In view of the fact that the letter was simply a written statement of the undisputed oral testimony given by the plaintiff on cross-examination, the letter could not have been prejudicial.

4. Coming now to the contention that Mr. Segerstrom was the procuring cause of the sale, we wish to say that there is nothing in the evidence to warrant the suggestion; it is a mere subterfuge. Mr. Loring, in his letter of March 19, 1918, to Mr. Shanklin, informed the latter that Segerstrom was interested with him in his negotiations for the Mill City property; whereas, Segerstrom contends that in May, 1918, he negotiated with the defendant and his associates for the sale of their interests in the company then owning the Sutton properties. Conceding that a company was organized after Mr. Page had been employed to procure a purchaser for the property, and that the property was in fact transferred to the corporation and the stock in the company sold to Loring instead of the property itself, to hold that the plaintiff could not recover because of this fact would be to put a premium on chicanery. To approve such a theory would enable a seller of property through an agent to defeat a claim for commission in every instance. All the principal would have to do would be to organize a corporation to take over the property and then transfer the stock. No such transaction can be looked upon with tolerance by a court of justice.

We have examined the record with a view of ascertaining whether any of the grounds assigned as a basis for a new trial, and which were not specifically considered by the trial court, have merit in them, and find none. We are of the opinion that the order appealed from should be reversed, and that judgment should be rendered upon the verdict returned by the jury.

It is so ordered.

### ON PETITION FOR REHEARING

By the Court, COLEMAN, J.:

The petition for rehearing must be denied. It is contended that in February, 1918, and before Loring visited Mill City, Sutton sold an interest in the property to W. C. Pitt, and hence the plaintiff is not entitled to commission thereon. This point was not urged in the briefs, nor, so far as we remember, or as appears from our notes or the notes of the official reporter, was it presented upon the oral argument. In view of the entire record in the case, we think there is no merit in the contention; but, in any event, we cannot consider it when presented for the first time on petition for rehearing. Nelson v. Smith, 42 Nev. 302, 176 Pac. 261, 178 Pac. 625; In Re Forney's Estate, 43 Nev. 227, 184 Pac. 206, 186 Pac. 678.

As to the other matters urged in the petition, we are entirely satisfied with what we said in our former opinion.

For the reasons given, the petition is denied.