THE STATE OF NEVADA, RESPONDENT, v.
CHARLES LEWIS, APPELLANT.

No. 3234

June 23, 1939.                    91 P.(2d) 820.

*Ham & Taylor, V. Gray Gubler* and *Clifford A. Jones,*
for Appellant:

*Gray Mashburn,* Attorney-General; *W. T. Mathews* and *Alan Bible,* Deputy Attorneys - General; *Roger Foley,* District Attorney; and *A. S. Henderson,* Deputy District Attorney, for Respondent:

## OPINION

By the Court, MCKNIGHT, District Judge:

Appellant was convicted of the crime of involuntary manslaughter and sentenced to six months in the county jail. This appeal is from the judgment and from the order denying a new trial.

Briefly stated, the facts are as follows: About nine o'clock on Christmas eve, December 24, 1937, Thomas Edward Stevenson, a large man, over six feet tall and weighing approximately 200 pounds, left the Grace Community Church on Wyoming street, in Boulder City, Nevada, of which he was pastor, carrying two buckets, one containing chili and the other cocoa, and started to walk south across the street to his home. The street runs east and west and is 56 feet wide between curbs. Reverend Stevenson reached a point on the street 35 feet 4 inches southerly from the north curb and 20 feet 8 inches northerly from the south curb, or 7 feet 4 inches beyond the center line of the street, when he was struck and instantly killed by an automobile then being driven by the appellant along the street in a westerly direction.

The defendant testified: "I noticed some person coming out from behind a car that was parked in front of the church, and I honked my horn at him and the fellow stopped, and I put on my brakes. I thought he was going to stand there, and he didn't, and I started on, and he had some stuff in his hands and he threw them up and it went all over the windshield, and about the same time I hit him."

Except for springing the hood on both sides, the damage on the car was all in .the left portion of the front. The left front of the grill around the radiator was mashed in and sprung back, and the hood was dented and sprung loose. The food carried by the deceased was spilled over the front of the car. There were a few spots on the windshield, but otherwise the condition of the windshield was not affected and vision through it was good.

There is no direct evidence concerning the speed of the automobile at the time. The skid marks on the street, all of which, at and before the place of impact, were over the center line and on the southern portion of the street—the wrong side of the street for a car traveling west—showed that after the brakes were applied by appellant, the car traveled a distance of 73 feet 3 inches before striking the deceased, and then a further distance of 29 feet 5 inches before stopping. A test of the brakes on the car showed that they were uniform and in good condition; and that at a speed of 35 miles an hour, a full application of the foot brake only would stop the car in 16 feet.

The testimony concerning the intoxication of the appellant is quite voluminous and very conflicting. Appellant testified that he drank a portion only of a bottle of 3.2 percent beer about thirty minutes before the tragedy. Some of the witnesses testified that he was intoxicated and others that he was not.

Nine separate and distinct specifications of error have been assigned. They will be disposed of in the order presented.

■■ Appellant first contends that the court erred in giving instruction No. 6½ as follows: "You are instructed that Involuntary Manslaughter shall consist in the killing of a human being, without intent to do so, in the commission of an unlawful act, or a lawful act which probably might produce such a consequence, in an unlawful manner."

This instruction is, in effect, the same as a portion

of section 10072 N. C. L. 1929, defining involuntary manslaughter, and was properly given. State v. Kelly, 1 Nev. 224, 227; State v. Willberg, 45 Nev. 183, 189, 191, 200 P. 475; Bias v. United States, 3 Ind. T. 27, 53 S. W. 471, 474.

If defendant had felt that a more particular instruction should have been given, he should have requested it. This he did not do, and cannot now be heard to complain of the lack of such instruction. State v. Switzer, 38 Nev. 108, 110, 145 P. 925; State v. Hall, 54 Nev. 213, 235, 13 P. (2d) 624.

The jury returned into court after it had retired to deliberate upon the case, and the foreman stated that the last part of said instruction was confusing; that the jury did not understand it aright; that some seemed to understand it, and that others were confused about it. Whereupon, the court informed the jury that the instruction was the statutory definition of involuntary manslaughter; that he could not orally instruct the jury in the absence of a stipulation; and that if the jury would retire a written instruction would be worked out. Thereupon, one of the jurors asked: "Juror: Will it be this here? If a man through an accident unavoidably and in the rights, killed another man on the highway would that be manslaughter? We are trying to find out if in just killing a man, and the man was in his rights, and it is unavoidable and he can't help it, would that be manslaughter?"

The jury was then asked to retire. Some twenty minutes later the jury returned into court, and, the record showing that the court might give instructions orally, the court said:

"The Court instructs you members of the jury, that portion of Instruction 6½ reading as follows: 'or a lawful act which probably might produce such a consequence, in an unlawful manner' has no application to this case."

"I again call your attention to Instruction No. 8, reading:

"If you are satisfied from the evidence, beyond a reasonable doubt, that the deceased came to his death by being struck by an automobile driven by the defendant upon a public highway, at the time and place charged in the Information, and, if you further believe from the evidence, beyond a reasonable doubt, that the said automobile was being driven by the defendant in an unlawful manner, to-wit: while the defendant was under the influence of intoxicating liquor or while the machine was being operated by the defendant in a reckless manner, or in any other than a careful and prudent manner; or at a rate of speed greater than is reasonable and proper, having due regard for the traffic, surface and width of the highway; or at such a rate of speed as to endanger the life, limb or property of any person, you should find the defendant guilty of Involuntary Manslaughter";

"to Instruction No. 19, reading:

"The jury are instructed that it would not be proper to single out any one of these instructions as the law of the case; they must all be considered together and construed as a whole";

"to Instruction No. 13, reading:

"If you believe from all the evidence in the case that Thomas Edward Stevenson, was killed as a result of an unavoidable accident, you should find the defendant not guilty."

"With that explanation I will ask you to retire again."

Clearly, the court had the right to give this oral instruction by the mutual consent of the parties. State v. Clark, 48 Nev. 134, 152, 228 P. 582.

It is even more clear that the oral instruction so given was beneficial and not prejudicial to the defendant, for by such oral instruction the jury were informed: "That Involuntary Manslaughter shall consist in the killing of a human being, without intent to do so, in the commission of an unlawful act."

The defendant at all times contended that he was not

engaged in the commission of an unlawful act at the time of the unfortunate killing. Therefore, if the court erred, in its oral instruction, in so defining involuntary manslaughter, it was error in appellant's favor, of which he cannot now complain. State v. Hall, 54 Nev. 213, 239, 13 P.(2d) 624.

■■ Appellant next contends that the court erred in giving instruction No. 12, which reads: "The degree of negligence required to be shown on a charge of manslaughter, where an unintentional killing is established, is such recklessness or carelessness as is incompatible with proper regard for human life."

In State v. Leonard, 195 N. C. 242, 141 S. E. 736, the court said that the language contained in this instruction well stated a principle of law in actions of this kind.

As shown by the following authorities, no one of which is directly in point but all of which are analogous, the instruction made it incumbent on the state to establish criminal negligence on the part of the defendant, as apparently required, where no intent is involved, by section 9955 N. C. L. 1929. State v. Beyers, 58 Nev. 125, 71 P.(2d) 1044, 1046; State v. Goetz, 83 Conn. 437, 76 A. 1000, 30 L. R. A. (N. S.) 458, 462; Cooper v. State, 61 Okl. Cr. 318, 67 P.(2d) 981, 987; People v. Driggs, 111 Cal. App. 42, 295 P. 51, 53; People v. Hurley, 13 Cal. App. (2d) 208, 56 P.(2d) 978, 981–983; State v. McMahan, 57 Idaho 240, 65 P.(2d) 156.

In a case of this kind, criminal negligence is not an extreme state of recklessness and wantonness, as claimed by appellant, the true rule in that respect being well expressed as follows: "When a person is doing anything dangerous in itself, or has charge of anything dangerous in its use, and acts with reference thereto without taking those proper precautions which a person of ordinary prudence would have used under the circumstances and the death of another results therefrom his act or neglect is a criminal act against the person so killed even though his negligence does not

amount to a wanton or reckless disregard of human safety or life." People v. Wilson, 193 Cal. 512, 226 P. 5, 7; People v. Crossan, 87 Cal. App. 5, 261 P. 531, 533; People v. Marconi, 118 Cal. App. 683, 5 P. (2d) 974, 976.

■ Appellant next contends that the court erred in giving instruction No. 15, which reads: "You are instructed that intent is not an element of the offense charged against the Defendant and that in this case, the State is not required to prove that the defendant intended to kill the deceased."

This instruction, when applied to the facts, correctly states the law. In Ex Parte Liotard, 47 Nev. 169, 173, 217 P. 960, 962, 30 A. L. R. 63, wherein petitioner, with another, had been charged with manslaughter, in that, while under the influence of intoxicating liquor, they so operated an automobile as to strike and kill another person, the court said: "Our statute does not make intent an element of the offense charged."

■■ Appellant next contends that the district attorney, in his closing argument to the jury, went beyond the limits of legitimate argument to the prejudice of the defendant.

The rule is well settled that it is error sufficient to reverse a judgment for a district attorney, against objection, to state facts pertinent to the issue, and not in evidence or to assume in argument to the jury such facts to be in the case, when they are not. People v. Mitchell, 62 Cal. 411, 412; State v. Rodriquez, 31 Nev. 342, 345, 102 P. 863; State v. Cyty, 50 Nev. 256, 258, 256 P. 793, 52 A. L. R. 1015.

But that rule has no application to this case. A very careful reading of the entire record fails to disclose the statement by the district attorney in his closing argument, of any fact, pertinent to the issue, not in evidence. The district attorney made no charge against the character of the defendant or his good name, nor did he so much as intimate that the defendant was guilty of any offense or offenses other than the offense of involuntary manslaughter on which he was being tried.

Matters of common knowledge and historical facts were referred to and interwoven in the argument, and allusion was made to the prevalence of death by automobile and the duty of the jury. The district attorney fully stated his views as to what the evidence showed, and as to the conclusions to be fairly drawn therefrom, and he expressly told the jury: "Look at this case as you have been instructed by the Court to look at it, and decide it solely from the evidence." At no time did he overstep the bounds of propriety. State v. Robison, 54 Nev. 56, 71, 6 P. (2d) 433; People v. Molina, 126 Cal. 505, 59 P. 34, 35; People v. Soeder, 150 Cal. 12, 87 P. 1016, 1020; People v. Burke, 18 Cal. App. 72, 122 P. 435, 448.

Appellant next contends that the court erred in failing to admonish the jury as required by section 10991 N. C. L. 1929, which reads: "The jury must also, at each adjournment of the court, whether they be permitted to separate or be kept in charge of officers, be admonished by the court that it is their duty not to converse among themselves, or with any one else, on any subject connected with the trial, or to form or express any opinion thereon until the cause is finally submitted to them."

This statute should have been and always ought to be strictly complied with. People v. Thompson, 84 Cal. 598, 24 P. 384, 387; People v. McKeehan, 11 Cal. App. 443, 105 P. 273, 274; Johnson v. State, 68 Ark. 401, 59 S. W. 34; State v. Mulkins, 18 Kan. 16.

The trial of this case commenced on Wednesday of one week and ended on Monday of the following week. At the afternoon recess on the first day the court informed the jury that they would be allowed to separate by consent of counsel, and then said: "It is the duty of the Court to admonish you not to form or express an opinion until the case is finally submitted to you. You are to be careful not to let anyone speak to you concerning any of the issues of the case, or to discuss it with anyone."

At the evening adjournment on the first day of the trial, the court said: "Members of the jury, during the recess kindly remember the admonition of the Court heretofore given you."

At each and every subsequent recess and adjournment, the court told the jury to "kindly heed the admonition of the Court heretofore given you."

It is quite clear that the court did not give the statutory admonition to the jury at any time. The only admonition ever given does not tell the jury, as expressly required by statute, "that it is their duty not to converse among themselves, or with anyone else, on any subject connected with the trial, or to form or express any opinion thereon until the cause is finally submitted to them."

The subsequent requests made by the court to the jury to kindly remember or to kindly heed the admonition of the court theretofore given, are wholly insufficient. Our statutes does not, as do the statutes of some states, provide that the "admonition must be given or referred to by the court at each adjournment." Instead, it provides that the court must, at each adjournment, admonish the jury in a particular manner. A mere reference to a prior admonition, even though that admonition complied with the statute, is not admonishing the jury as the statutes requires.

Obviously the failure of the court to properly admonish the jury was a mere oversight, which the court would have promptly corrected had its attention been called thereto. The court was not requested to admonish the jury, nor was there any exception at the time of its failure to do so.

But as the statute makes it the imperative duty of the court, without any suggestion, at each adjournment of the court, to admonish the jury as therein provided, a defendant does not waive any rights by failing to request the court to admonish the jury, or by failing to call the attention of the court to the matter at the time the court

fails to give the statutory admonition, or by failing to except to the failure of the court to admonish the jury as required by the statute. State v. Mulkins, 18 Kan. 16, 19; Johnson v. State, 68 Ark. 401, 59 S. W. 34.

However, the rights of a defendant under this statute can be later waived, and were actually waived by the defendant in this case. Defendant's motion for a new trial and his motion to vacate the verdict were each made and based upon numerous grounds, excluding, however, any reference whatever to the failure of the court to give the statutory admonition to the jury. In State v. Gray, 19 Nev. 212, 222, 8 P. 456, this court held that the failure of the trial court to admonish the jury as required by statute will not justify the granting of a new trial where it is clearly shown that the defendant was not injured thereby. Had such failure been called to the attention of the trial court at the time of the motion for new trial, the state would have had the right to show, and perhaps could have shown, that nothing transpired during the separations of the jury prejudicial to the defendant's rights.

This court has often held that one charged with crime may waive a statutory requirement. State v. Roderigas, 7 Nev. 328, 333; State v. Larkin, 11 Nev. 314, 325; State v. Collyer, 17 Nev. 275, 279, 30 P. 891; McComb v. District Court, 36 Nev. 417, 421, 136 P. 563; State v. Holt, 47 Nev. 233, 238, 219 P. 557.

By not moving for a new trial because of the failure of the court to admonish the jury as required by statute, the appellant clearly waived the error now complained of. As said in State v. Mulkins, 18 Kan. 16, 19: "If the defendant had failed to move for a new trial because of said failure [the failure to admonish the jury], then perhaps we might presume that the defendant had waived the error, or at least we might presume that the error did not work any substantial prejudice to his rights, and therefore, and for that reason, he did not choose by moving for a new trial on that ground to put

the state to the trouble of showing that nothing prejudicial in fact occurred during the irregular separation of the jury."

■ Appellant next contends that the court erred in settling the instructions in chambers.

The record discloses that the defendant, in open court, before and after the reading of the instructions to the jury, excepted to said instructions, and to each and every one of them, upon six different specified grounds; and that thereafter, and before the submission of the case and argument of counsel, the defendant submitted in writing and requested the court to give the jury fifteen additional instructions, and that the court declined and refused to give each and all of them.

The affirmative action of the court regarding the instructions, thus taken in open court, conclusively establishes the fact that the instructions were actually settled in open court and disproves an inadvertent expression in the record to the contrary. That the instructions were properly settled in open court cannot be denied, because, as said in Kline v. Vansickle, 47 Nev. 139, 144, 217 P. 585, 586: "It is true that the judge frequently informally considers tendered instructions in his chambers, but action thereupon is taken in open court, though he may indicate what his ruling will be. Ruling upon tendered instructions and objections thereto is a part of the trial of a case, and the trial must be in open court, and all objections and exceptions must be made there." Apparently that is exactly what happened in this case.

■ Appellant next contends that there is no lawful verdict or verdict upon which a judgment could be rendered, in that: (1) The verdict is not in the form required by the statute; (2) The verdict was coerced by the court; and (3) The verdict was not rendered and recorded as required by law.

Except for the entitlement of court and cause, the verdict in this case and the recommendation appended thereto read as follows:

"We, the Jury in the above entitled action, find the Defendant, Charles Lewis, guilty of Involuntary Manslaughter.

"Dated, Las Vegas, Nevada, February 21, 1938.

"Robert O. Gibson, Foreman.

"We recommend the Court be Lienent.

"Robert O. Gibson."

The record shows that the following occurred:

"The Court: Have you agreed upon your verdict?

"Foreman: We have, Your Honor.

"The Court (Indicating to the Foreman): Will you read that portion of it.

"Foreman: 'We, the Jury, in the above entitled action find the defendant, Charles Lewis, guilty of involuntary manslaughter.'

"Mr. Ham: May we ask to have the jury polled?

"The Clerk of the Court, after entering the verdict upon the minutes of the Court, reads the verdict and upon asking each and every member of the jury whether that is his verdict, they all replied in the affirmative, the reply of Juror Andrew T. Johnson being 'Yes, that is with the other added.'

"Mr. Ham: May the record reveal that exception, if there is one?

"The Court: Mr. Johnson, what is your answer to the question, was that your verdict? I understand you recommend the Court to be lenient, but you do find the defendant guilty, that's your verdict?

"Mr. Johnson: Yes, sir.

"The Court: I understand that there is appended to the verdict the statement: 'We recommend the Court to be lenient.'

"Mr. Johnson: Yes, sir;

"The Court: "That's the recommendation of the jury in this case, and that recommendation will be taken into consideration by the Court when it comes time for the pronouncement of judgment."

Section 11014 N. C. L. 1929 provides that: "A verdict upon a plea of not guilty shall be either 'guilty' or

'not guilty,' which imports a conviction or acquittal of the offense charged in the indictment or information."

Section 11016 N. C. L. 1929, reads: "Whenever a crime is distinguished into degrees, the jury, if they convict the defendant, must find the degree of the crime of which he is guilty."

The verdict rendered in this case, eliminating the recommendation annexed thereto, complies strictly with these sections. The effect of appellant's contention is that the recommendation of the jury annexed to the verdict, that the court be lenient, is not mere surplusage, but is a condition which renders the verdict nugatory. There is no merit in such contention.

It is well settled that, except where authorized by statute, words recommending mercy or leniency constitute no part of the verdict, but are merely in addition thereto, in no wise qualifying the verdict's legal effect, and may be rejected as surplusage. State v. Stewart, 9 Nev. 120, 134; State v. Gray, 19 Nev. 212, 222, 8 P. 456; 8 Cal. Jur. page 407, sec. 436; 16 C. J. page 1110, sec. 2601; Notes 17 A. L. R. 1161; 87 A. L. R. 1372.

The claim of appellant that the verdict was coerced by the court is based upon the conversation between the court and Juror Johnson, shown above, and merits no consideration.

In support of appellant's contention that the verdict was not rendered and recorded as required by law, it is urged that the jury were not polled before the verdict was recorded, contrary to section 11021 N. C. L. 1929, which reads: "When a verdict is rendered, and before it is recorded, the jury may be polled, on the requirement of either party, in which case they shall be severally asked whether it be their verdict, and if anyone answer in the negative, the jury shall be sent out for further deliberation."

After the verdict was rendered, and before it was recorded, the defendant had the right under this statute to request, as he did, that the jury be polled. The language of the statute is clear and unambiguous, and needs

no interpretation. The statute prescribes the time and manner of polling the jury, and should be followed. Cases might arise where a failure to comply with its provisions would be prejudicial to a defendant. However, in this case, the jury were actually polled, after the verdict was recorded, without any objection or exception on the part of the defendant, and each juror answered that the verdict was his. Under these circumstances, the right of polling was in effect and substantially accorded to the defendant. People v. Nichols, 62 Cal. 518, 521.

■■ Appellant next contends that the jury were guilty of gross misconduct, and that the verdict was coerced as a result of misrepresentation and deceit of fellow jurors, in that some member of the jury deleted instruction No. 6½, by drawing a pencil line through the last four words thereof, and then represented to the remaining jurors that the court had made such deletion.

In support of this assignment, appellant relies upon the affidavits of three of the jurors offered on his motion for a new trial and rejected by the court, and upon said instruction, as originally given, with the last four words deleted.

The affidavits of the two jurors recited, among other things, that the jury retired after the court had given its oral instruction, and "upon again reading said Instruction No. 6½ said instruction was changed by a pencil marking out of the last four words of said instruction, to-wit: 'in an unlawful manner.' That it was represented to me by other jurors that said instruction was amended by the Court to read as the same then appeared with the last four words of said instruction crossed out with a pencil mark."

The affidavit of the other juror recited, among other things: "That the Court was asked to explain said above instruction No. 6½, and that the said instruction was changed and amended by the Judge of said Court by striking out the last phrase, 'in an unlawful manner,' making said instruction read as follows, to-wit:

'You are instructed that Involuntary Manslaughter shall consist in the killing of a human being, without intent to do so, in the commission of an unlawful act, or a lawful act which probably might produce such a consequence, ~~in an unlawful manner.' "~~

The last-mentioned affidavit is clearly contrary to the facts as shown by that portion of the record hereinbefore set forth, and the other affidavits do not disclose the name of any juror who misrepresented any facts. Such affidavits are valueless.

Moreover, it is a well established general rule, founded upon well-recognized grounds of public policy, that a juror will not be heard to impeach his own verdict. State v. Stewart, 9 Nev. 120, 134; State v. Crutchley, 19 Nev. 368, 369, 112 P. 113; Southern Nevada Gold & Silver Mining Co. v. Holmes Mining Co., 27 Nev. 107, 145–151, 73 P. 759, 103 Am. St. Rep. 759; Page v. Sutton, 45 Nev. 395, 401, 204 P. 881, 207 P. 1102; Priest v. Cafferata, 57 Nev. 153, 157, 60 P. (2d) 220.

■ Appellant next contends that the court erred in not vacating the verdict and in denying the motion for a new trial.

Appellant does not claim that the want of evidence demands a reversal, but does claim that the evidence is slight and unsatisfactory and that its weakness emphasizes the prejudicial effect of the numerous other errors assigned.

A thorough consideration of all of the other alleged errors, hereinbefore discussed, shows that the appellant was in no way prejudiced. The evidence discloses that the jury might well have found that there were several violations of the traffic laws which appellant may have committed, to-wit: Driving an automobile while intoxicated or under the influence of intoxicating liquor, driving at a rate of speed in excess of that permitted by law, reckless driving, and driving on the wrong side of the street. Therefore, as said in People v. Von Eckartsberg, 133 Cal. App. 1, 23 P. (2d) 819, 821: "It must be

conceded that if the record contains any evidence tending to show that appellant was guilty of any one of the aforesaid violations of law this court may not declare that the trial court abused its discretion in refusing a new trial."

A most careful consideration of the entire record fails to disclose any prejudicial error. Therefore, the judgment and the order denying a new trial should be, and they hereby are, affirmed.

ORR, J., being disqualified from participating in this opinion, the Governor designated HON. WM. MCKNIGHT, Judge of the Second Judicial District Court, to sit in his place.